### WOLFSON v. UNITED STATES.[1]

#### (Circuit Court of Appeals, Fifth Circuit. April 10, 1900.)

#### No. 770.

1. GRAND JURY—IRREGULARITY IN ORGANIZATION—WAIVER OF OBJECTION.

Objections to a grand jury, based on the ground merely of irregularity in its organization, from which fact defendant has suffered no prejudice, are not viewed with favor, and will not be sustained where only raised by a motion to quash, filed more than two months after the indictment is returned, although the defendant was placed under bond to await the action of such grand jury prior to the term at which it was drawn and impaneled.

2. CRIMINAL LAW—EVIDENCE—PROVING OTHER OFFENSES.

On the trial of a joint indictment charging an employé of a national bank with having unlawfully abstracted money from the bank, and the drawer of checks upon which the money was paid out with having aided and abetted in such abstraction, evidence to show that, while the second defendant had apparently a balance to his credit, as shown by the books, his account had in fact been overdrawn for years, is relevant and admissible, although it also tends to establish other offenses, prosecution for which is barred by limitation.

3. SAME—DEFENDANT AS WITNESS—TRIAL OF DEFENDANTS JOINTLY.

Under Act March 16, 1878 (20 Stat. 30), providing that in the trial of persons charged with criminal offenses in the courts of the United States "the person so charged shall, at his own request, but not otherwise, be a competent witness," one of two defendants jointly indicted and tried may, at his own request, be examined as a witness by the government.

In Error to the Circuit Court of the United States for the Eastern District of Louisiana.

J. D. Rouse (W. O. Hart, Wm. Grant, and A. G. Brice, on the brief), for plaintiff in error.

J. Ward Gurley, U. S. Atty.

[1] For dissenting opinion, see 102 Fed. 134.

Before PARDEE and SHELBY, Circuit Judges, and BOARMAN, District Judge.

SHELBY, Circuit Judge, delivered the opinion of the court. Three indictments were found against Frank B. Leefe, a bookkeeper of the Union National Bank of New Orleans, and Joseph N. Wolfson, the plaintiff in error. All of the indictments were for offenses committed under section 5209 of the Revised Statutes of the United States. In the first indictment Leefe was charged in 91 counts with the abstraction of moneys, notes, and credits of the Union National Bank of New Orleans, and Wolfson was charged with having aided and abetted him in such abstraction. In the second indictment Leefe was charged in 91 counts with having misapplied the moneys, notes, and credits of the Union National Bank of New Orleans, and Wolfson was charged with having aided and abetted him in such misapplication. In the third indictment Leefe was charged in 134 counts with having made false entries in the books of the Union National Bank of New Orleans, and Wolfson was charged with having aided and abetted him in such false entries. On motion of the district attorney the indictments were ordered to be consolidated, and tried as one case. The defendants were tried, and the jury returned a verdict of guilty. The defendants were then sentenced to imprisonment in the penitentiary for eight years. The defendant Wolfson thereupon sued out this writ of error, seeking to reverse the judgment against him. The record contains 457 printed pages. There are 24 assignments of error. It is conceded that several of the questions raised were decided adversely to the plaintiff in error by the circuit court of appeals for the Fifth circuit in recent cases involving indictments similar to those in the present case. Gardes v. U. S., and Girault v. Same, 58 U. S. App. 219, 30 C. C. A. 596, 87 Fed. 172; Gallot v. Same, 58 U. S. App. 243, 31 C. C. A. 44, 87 Fed. 446. We have carefully examined and considered all the assignments of error. In this opinion, however, we shall comment only on questions which we deem important, and which have not been decided in the cases above cited.

1. It is assigned that the court erred in overruling the motion to quash the indictments, because the grand jury that found the indictments was not lawfully constituted and impaneled. It is not alleged in the motion, or claimed, that there was any unfairness, that a prejudiced grand jury was selected, or that any one of the grand jurors was incompetent, or in any way disqualified. The questions raised relate to the procedure by which the grand jury was selected and impaneled. The following is the statute which it is claimed was violated:

"Every grand jury impaneled before any district or circuit court shall consist of not less than sixteen nor more than twenty-three persons. If of the persons summoned less than sixteen attend, they shall be placed on the grand jury, and the court shall order the marshal to summon, either immediately or for a day fixed, from the body of the district, and not from the bystanders, a sufficient number of persons to complete the grand jury. And whenever a challenge to a grand jury is allowed, and there are not in attendance other jurors sufficient to complete the grand jury, the court

shall make a like order to the marshal to summon a sufficient number of persons for that purpose." Rev. St. § 808.

The court ordered that the names of 23 persons be drawn to constitute the grand jury. The court also ordered that 10 additional names of persons be drawn to serve as grand jurors. The grand jury was organized by first calling the 23 persons first drawn. Sixteen of them appeared, and were sworn as grand jurors, together with 7 of the 10 ordered to be drawn and summoned. A grand jury composed of these 23 persons was organized and sworn. The contention of the plaintiff in error is that, as 16 of the 23 persons first drawn appeared, the court was without jurisdiction or authority to impanel a grand jury composed of more than 16. It is also contended that the court was without authority to order drawn and summoned the 10 in addition to the venire of 23 persons. The practical question to be decided by this court is whether the trial court committed a reversible error in overruling the motion to quash the indictment. It is well settled that a motion or plea challenging the organization of a grand jury should be made at the first opportunity. A defendant under bond, whose case is to be examined by the grand jury, should, if opportunity is presented, make his objections to the grand jury before it passes on his case. He should not be permitted, knowing that his case is to be presented to the grand jury, and having an opportunity to object to its competency, to wait, and take chances, and then object to it after an indictment is found. If no opportunity is had to object before indictment, it may be made the first opportunity after indictment is found. Wolfson was first arrested on these charges on September 21, 1896, and gave bond on October 6, 1896, to appear before the circuit court of the United States for the Eastern district of Louisiana on the 2d day of November, 1896. The order to draw the grand jury was made on November 26, 1896. The grand jury was drawn and the venire summoned on November 30, 1896. The indictments were returned and filed in court 4 months and 20 days later (April 20, 1897), and 2 months and 13 days afterwards (July 3, 1897) the objection was first raised, by motion filed that day, to the manner of the organization of the grand jury. No explanation or reason is given for the delay. Under these circumstances we are constrained to hold that the objections come too late. In Agnew v. U. S., 165 U. S. 36, 17 Sup. Ct. 235, 41 L. Ed. 624, the defendant filed a plea in abatement seeking to quash the indictment because the grand jury had not been drawn and impaneled in conformity to law. The original venire was issued on November 18, 1895, and the second venire was issued on December 2, 1895. The court opened on December 3, 1895, and the indictment was returned on December 12, 1895. The defendant filed his plea on December 17, 1895. The supreme court held that the plea came too late. Mr. Chief Justice Fuller, delivering the opinion, said:

"Where he is notified that his case is to be brought before the grand jury, he should proceed at once to take exception to its competency, for, if he lies by until a bill is found, the exception may be too late. But where he has had no opportunity of objecting before bill found, then he may take advantage of the objection by motion to quash or by plea in abatement, the latter in all cases of contested fact being the proper remedy. * * * The

plea does not allege want of knowledge of threatened prosecution on the part of defendant, nor want of opportunity to present his objection earlier, nor assign any ground why exception was not taken or objection made before; and, moreover, the plea is fatally defective in that, although it is stated that the drawing 'tended to his injury and prejudice,' no grounds whatever are assigned for such a conclusion, nor does the record exhibit any such."

When questions relating merely to the regularity of the organization of the grand jury are raised in time, they are not viewed with much favor. The courts would peremptorily check and punish an effort to corruptly organize a grand jury or would prevent any injustice or unfairness in its formation; but, when nothing of that kind is shown, or even alleged, the court is reluctant to grant a motion to quash the indictment on account of irregularities that work no hardship or injustice. In U. S. v. Eagan (C. C.) 30 Fed. 608 (one of the few cases that construe the statute in question here) it was insisted that there was an irregularity in the organization of the grand jury because five of the jurors were not drawn in the manner provided by the act of 1879. Judge Brewer said:

"But a challenge to a grand jury, based on the mere ground of irregularity in its organization, was never regarded with any favor; less so to-day than ever."

Judge Thayer, in a concurring opinion in the above case, conceding that there had been an irregularity in choosing five of the grand jurors, said:

"But this irregularity in choosing the five grand jurors will not avail (after the jury has been sworn, and have found indictments) as ground for quashing the indictment so found, either on plea in abatement or otherwise, when it appears that the jurors so irregularly chosen were competent and qualified jurors, residing in the district, and that the only irregularity consists in the method of selecting them. The plea in abatement does not, in my judgment, state any fact with respect to the five additional grand jurors that would amount to a disqualification, either at common law or under the statutes of this state, if the defendant had been present to challenge them before they were sworn."

It is unnecessary to express an opinion further on the question here raised. The trial judge was justified in overruling the motion to quash the indictment, because the objections to the procedure in organizing the grand jury were not made in proper time. To hold otherwise would be in conflict with Agnew v. U. S., supra.

2. It is assigned that the court erred in admitting, against the objection of the defendant, the testimony of Edward P. Moxey, tending to show that the account of the defendant with the Union National Bank of New Orleans had been largely overdrawn, as appeared from alleged entries in the books of that bank prior to the 21st day of April, 1894, and as far back as February, 1892, covering a period of time more than three years prior to the filing of the indictments. It is insisted that the evidence of Moxey tended to show the commission of criminal offenses for which Wolfson was not on trial, and that these offenses were barred by the statute of limitations. One of the offenses charged in the indictment was the unlawful abstraction of money from the bank. The money was paid out on Wolfson's checks. Wolfson apparently had to his credit $267.97. Some of the checks were drawn for sums less than the amount standing on the books to

Wolfson's credit. If Wolfson really had the money on deposit, that would be a defense to the charge, because it would be no fraud to draw out his own money. It was, therefore, relevant for the government to prove, if it could, that he in fact had no money to his credit; that is, the government had the right to prove, if it could, that his account was overdrawn. When a defendant is on trial for one offense, irrelevant testimony of the commission of another offense should not be received. If, however, the evidence is relevant, if it tends to prove the commission of the offense for which the defendant is on trial, or, in cases where the intent is material, if it tends to show the intent with which the act charged was committed, the fact that the evidence shows the commission of another offense does not serve to exclude it. In Wood v. U. S., 16 Pet. 342, 360, 10 L. Ed. 987, 994, the supreme court, Mr. Justice Story speaking for the court, said:

"Where the intent of the party is matter in issue, it has always been deemed allowable, as well in criminal as in civil cases, to introduce evidence of other acts and doings of the party of a kindred character, in order to illustrate or establish his intent or motive in the particular act directly in judgment."

In the case of Moore v. U. S., 150 U. S. 57, 14 Sup. Ct. 26, 37 L. Ed. 996, the defendant was indicted for the murder of Charles Palmer. The government relied mainly on circumstantial evidence. Some of this evidence tended to show that the defendant was also guilty of the murder of a man named Camp. Objection was interposed to that part of the evidence. Mr. Justice Brown, speaking for the court in that case, said (at page 61, 150 U. S., page 28, 14 Sup. Ct., and page 998, 37 L. Ed.):

"The fact that the testimony also had a tendency to show that defendant had been guilty of Camp's murder would not be sufficient to exclude it, if it were otherwise competent."

The trial judge carefully limited the application of Moxey's evidence. The jury was instructed as to its purpose, and was informed that it was not offered, and could not be used, for the purpose of convicting the defendants of offenses for which they were not on trial. The fact that this evidence tended to prove another crime does not, as we have seen, exclude it. The fact that a prosecution based on the acts offered in evidence would have been barred by the statute of limitations is immaterial. If the evidence was relevant, it was not affected as evidence by the lapse of three years from the occurrences.

3. The trial had proceeded several days, when the attorney for the defendant Leefe offered him as a witness. Among other things, the attorney for Leefe, speaking for him, said, "I now ask that he be heard, and he himself requests to become a witness." The attorney for the government said, "If your honor please, if he requests it, I have no objection." The attorney representing Wolfson objected to Leefe as a witness, because he was a co-defendant with Wolfson, and on trial with him, and because he could not be heard to testify in any way to affect his co-defendant, and because Leefe was indicted as the principal, and Wolfson as his accomplice. The attorney for Wolfson also suggested that it was irregular to offer Leefe as a witness before the government had closed its case. The following proceedings were then had:

"By the Court: Has the government closed? By Mr. Theard, Attorney for Leefe: I have offered him freely to be used by the government, if the government sees fit. By Mr. Rouse, Attorney for Wolfson: Does the government call him? By Mr. Gurley, Attorney for the Government: The government accepts the request, and will examine him as a witness of the government at this time. By the Court: Swear the witness, Mr. Clerk."

Leefe was sworn, and examined and cross-examined. Wolfson reserved an exception to the ruling of the court in permitting Leefe to become a witness. The government rested at the conclusion of Leefe's examination. The ruling of the court on this point is assigned as error, as follows:

"The court erred in admitting the defendant Frank B. Leefe, called and examined as a witness on behalf of the United States, against the objection of this defendant, and in permitting his testimony to go to the jury upon the trial of this cause against this defendant's objection, he being joined with him in said indictments, and being then and there on trial jointly with this defendant before the same jury."

The common law excluded as witnesses parties to the record and persons interested in the result of the trial. The rule was applied in all its strictness to civil cases, preventing even a nominal plaintiff from testifying; and in criminal cases a defendant at common law could not be a witness for himself. He was permitted in capital cases, and, according to some authorities, in cases not capital, to make an unsworn statement to the jury, but not as a witness, and he was not subject to cross-examination. Whart. Cr. Ev. (9th Ed.) p. 359, § 427. A defendant, at common law, was ordinarily not permitted to be a witness for or against his co-defendant. The rule, however, was not applied with all the strictness of the similar rule in civil cases. If the co-defendant pleaded guilty, he was a competent witness, before sentence was pronounced on him to make him infamous, and to disqualify him, although nominally he was a party to the record. Id. p. 372, § 439, note 6. If he were acquitted, or if the government dismissed the case as to him, he was made a competent witness. The contention of counsel for the plaintiff in error is well stated in his own words:

"It is hornbook learning that, where two persons are jointly indicted and put upon trial before the same jury, neither can be a witness for or against the other unless the interest of the one so called has been terminated either by acquittal, conviction, or nolle prosequi."

Many authorities sustain this view. This statement of the common law is useful as showing the barriers to getting at the facts of a case, which modern statutes were intended to remove. Of the wisdom or the want of wisdom of these common-law rules we have nothing to say. They have been commended as preventing perjury and securing justice, and condemned as stopping the mouths of those who are often the only persons that know the facts of the case. The trend of legislation and judicial decision of the present day is to enlarge, and not contract, the sources of evidence. The question before the court is one of statutory construction. On March 16, 1878, the congress enacted the following statute:

"An act to make persons charged with crimes and offenses competent witnesses in the United States and territorial courts. Be it enacted," etc., "that in the trial of all indictments, informations, complaints, and other proceed-

ings against persons charged with the commission of crimes, offenses, and misdemeanors, in the United States courts, territorial courts, and courts-martial, and courts of inquiry, in any state or territory, including the District of Columbia, the person so charged shall, at his own request but not otherwise, be a competent witness. And his failure to make such request shall not create any presumption against him." Act March 16, 1878 (20 Stat. 30, c. 37).

This statute in terms makes a defendant a competent witness. The statute does not say "a competent witness for himself." It does not say "a competent witness for the government." He is made simply "at his own request, but not otherwise," a competent witness. It would clearly be improper for the government, while he was on trial, in the absence of a request on his part, to call him as a witness. The purpose of the law was to make defendants competent witnesses, but at the same time preserve to them the right to remain silent without prejudice. When any defendant chooses to testify, the statute permits him to do so. It does not matter whether his testimony is for or against himself, or for or against his co-defendant. The only limitation in the statute is that he shall not be made a witness except on his own request. Being sworn as a witness at his own request, he is amenable, generally, to the rules governing other witnesses. He could testify against or for his co-defendant on trial with him, because the only reason why he could not do so at common law was that he was a party to the record, and interested in the case. In other words, the only common-law reason for his exclusion was that he was a defendant also on trial. The statute clearly removes that objection. The fact that two defendants were on trial does not prevent the statute applying. There is nothing in it to confine its operation to cases where but a single defendant is named in the indictment. At the time the statute was passed, the law permitted two or more defendants to be jointly indicted. It was left in the discretion of the court to grant or refuse separate trials. U. S. v. Marchant, 12 Wheat. 480, 6 L. Ed. 700. The congress surely meant that this statute should be applied to cases where several defendants were indicted together, so as to make each of them a competent witness; otherwise, it would have been left in the discretion of the court, where more than one were in the same indictment, to abrogate the statute by refusing a severance.

We think the statute made Leefe a competent witness at his own request. To construe it otherwise would do violence to its plain words, and would defeat the legislative intent.

The authorities construing state statutes seem to sustain the view that Leefe was a competent witness. The statute in Iowa (Revision, § 3978) provides that all persons "are competent witnesses in all cases, both civil and criminal," with exceptions not material to be mentioned. Construing this statute, the supreme court, Judge Dillon delivering the opinion, held that, "where two or more defendants are jointly indicted and tried, each may call upon and use his co-defendants as a witness, the same as though separate trials had been granted." It would seem to be unreasonable, said the court, "to make the competency of a witness depend alone upon the fact whether the trial were joint or several, and whether it shall be joint and several dependent upon the discretion of the court. That is, a party accused

may or may not use a certain witness, in the discretion of the court. Such would be the result of a contrary holding in the case before us. Again, the rules of evidence adopted by the common law had, in many cases, the effect to bar out light. The tendency of modern legislation and modern decision is to remove the bars, and to let in the light." State v. Gigher, 23 Iowa, 318. This construction of the statute was followed in a later case. State v. Stewart, 51 Iowa, 312, 1 N. W. 646.

There is a statute in Massachusetts similar to the United States statute. The supreme court of that state, construing the statute, held:

"At the trial of an indictment against two persons jointly, if one of them offers himself as a witness, his testimony is competent against the other defendant, and may, by permission of the court, be introduced after the government has rested its case." Com. v. Brown, 130 Mass. 279.

In Newman v. People, 63 Barb. 630, the court construed the New York statute which allows a defendant to testify. That statute makes him a competent witness in his own behalf. It was shown in the court below that the defendant had been convicted of a felony. The court, on the trial, instructed the jury to wholly disregard his testimony. On appeal the supreme court reversed the decision of the lower court, and held that the law "intended to allow a prisoner the benefit and privilege of stating to the jury any matter which was calculated to explain the charge against him. This privilege was to be enjoyed irrespective of any matter which could disqualify a witness under ordinary circumstances." 29 Am. & Eng. Enc. Law, p. 663, notes 1, 2.

In construing the Maine statute the supreme court of that state said:

"The reason at first given for not allowing a party to testify was his interest. The old common law shuddered at the idea of any person testifying who had the least interest. But that reason failed sometimes. In many civil cases a party had no interest. Then it was decided that public policy or expediency prevented the reception of the testimony. A party to the record was not permitted to testify, whether interested or not. If only a nominal plaintiff, he could not testify. either for the plaintiff or defendant. Kennedy v. Niles, 14 Me. 54. Without much reasoning upon the subject, the law pronounced against it. The rule was general. But, as stringent as the rule was, it did not apply to indictments to its full extent. The parallel between civil and criminal cases was not kept up. If a man was indicted, and pleaded guilty, he could testify for his co-defendant. State v. Jones, 51 Me. 125. If, however, he was sued for the same cause, and became defaulted, he could not testify for his co-defendant. Gilmore v. Bowden, 12 Me. 412. Courts seem inclined not to regard a co-defendant in a criminal case as a party, unless 'a party to the issue on trial.' That distinction is taken in the English cases before cited. To be incompetent to testify, the defendants must be in charge of the same jury. Mr. Starkie struck the same key, who declared that 'an indictment against several is several as to each.' 2 Starkie, Ev. 11. It is plainly seen that there is much authority and reason for regarding an indictment of two or more persons as in effect a joint and several indictment: joint when the accused are tried jointly, and several when tried separately. But, as before intimated, we are not to look upon the question before us as exclusively one at common law. Our statutory enactments bear upon it. They have weakened, if not abrogated, the arrangement of public policy. It was, no doubt, the design of the legislature that the objection to the competency of parties as witnesses should be removed in both civil and criminal cases. In civil cases the door

is opened wide. In criminal cases the provision is this: 'In all criminal trials, the accused shall, at his own request, but not otherwise, be a competent witness. .* * * The husband or wife of the accused is a competent witness.' Rev. St. c. 134, § 19. While this enactment does not cover the present question with literal exactness, it approaches it, affects and influences it, and requires us to examine the matter in the light of the legislative policy declared by it. If both defendants were on trial at the same time, either could testify. Com. v. Brown, 130 Mass. 279. If the argument for the defendant is sound, then the common-law rule has become reversed. Defendants can testify against each other when tried together, and cannot so testify when tried apart. We do not assent to such a proposition." State v. Barrows, 76 Me. 401.

Construing the Indiana statute, the supreme court of that state said:

"The appellant prosecutes this appeal from a judgment sentencing him to prison for the crime of manslaughter. He was jointly indicted with one George Melrose, and the latter was permitted to testify as a witness. In this there was no error. At common law the weight of modern authority is that an accomplice may testify for the prosecution, if he consents to do so. A recent writer says, 'A few cases decide that an accomplice who has not been indicted is competent, but the great weight of authority raises no distinction between accomplices who have been and those who have not been indicted.' Rap. Wit. § 21. But our statute dispels whatever doubt may have existed before its enactment. It radically changes the old and original common-law rule and establishes an essentially different policy. It permits the accused to be a witness in his own behalf. It declares that the conviction of an infamous crime shall not disqualify a witness. It goes further, for it declares that in criminal prosecutions 'the following persons are competent witnesses: All persons who are competent to testify in civil actions, * * * accomplices, when they consent to testify.' Rev. St. 1881, § 1798. In civil actions parties may be witnesses, and no witness is disqualified because he conspired with another to commit a tort, or assisted him in its commission; and it seems difficult to perceive why, even if the first provision quoted stood alone, an accomplice would not be competent. But it is not necessary to act upon that provision alone, for it must be taken in connection with the other that we have quoted, and, thus taken, no doubt can exist as to the meaning of the statute. The statute declares that all accomplices may testify. It imposes no limitations and creates no exceptions. The courts have no authority to do either. The question, however, is not a new one in this court, for it has always been held that an accomplice is a competent witness. Johnson v. State, 2 Ind. 652; Stocking v. Same, 7 Ind. 326; Ulmer v. Same, 14 Ind. 52; Johnson v. Same, 65 Ind. 269; Ayers v. Same. 88 Ind. 275. In Ulmer v. Same, supra, and in Johnson v. Same, supra, the witness was jointly indicted with the accused. In Stocking v. Same, supra, the court said of the testimony of an accomplice that: 'It is very true that the evidence of persons standing in such a relation to each other should be carefully scrutinized by the court and jury. Yet to exclude it altogether would often exclude the only means of disclosing guilt. For this reason the Revised Statutes abolished the distinction which the pronouncing of judgment formerly made in regard to a witness that was infamous. 2 Rev. St. 1852, p. 80, § 238, and Id. page 83, § 243. What before affected his competency under that enactment goes only to his credibility.'" Conway v. State, 118 Ind. 482, 484, 21 N. E. 285.

In Benson v. U. S., 146 U. S. 325, 13 Sup. Ct. 60, 36 L. Ed. 991, the supreme court held:

"When two persons are jointly indicted for crime, and a severance is ordered, one of the accused, whose case is undisposed of, may be called and examined as a witness on behalf of the government against his co-defendant."

In this case it will be observed that a severance had been ordered, and the co-defendant offered as a witness was not on trial. The supreme court, however, quoted the case of Com. v. Brown, 130 Mass.

279, approvingly. The court said (at page 336, 146 U. S., page 63, 13 Sup. Ct., and page 996, 36 L. Ed.):

"Indeed, the theory of the common law was to admit to the witness stand only those presumably honest, appreciating the sanctity of an oath, unaffected as a party by the result, and free from any of the temptations of interest. The courts were afraid to trust the intelligence of jurors. But the last fifty years have wrought a great change in these respects, and to-day the tendency is to enlarge the domain of competency, and to submit to the jury for their consideration as to the credibility of the witness those matters which heretofore were ruled sufficient to justify his exclusion. This change has been wrought partially by legislation and partially by judicial construction. By congress, in July, 1864 (Rev. St. § 858), it was enacted that 'in the courts of the United States no witness shall be excluded in any action on account of color, or in any civil action because he is a party to or interested in the issue tried,' with a proviso as to actions by and against executors, etc. And on March 16, 1878, it also passed an act permitting the defendant in criminal cases to testify at his own request (20 Stat. 30, c. 37). Under that statute, if there had been no severance, and the two defendants had been tried jointly, either would have been a competent witness for the defendants, and though the testimony of the one bore against the other, it would none the less be competent. Com. v. Brown, 130 Mass. 279. The statute in terms places no limitation on the scope of the testimony, for its language is, 'The person so charged shall at his own request, but not otherwise, be a competent witness.' "

The case of Benson v. U. S., supra, is not strictly in point, because there had been a severance, and only one defendant was on trial; but the language of the opinion shows that the supreme court treats the statute as placing no limitation on the scope of the testimony, or the competency of the defendant as a witness, when he becomes a witness at his own request.

We find no error in the record to the injury of the plaintiff in error. The judgment of the circuit court is affirmed.