HEITLER v. UNITED STATES.

SHAFFNER v. SAME.

(Circuit Court of Appeals, Seventh Circuit.  April 10, 1917.)

Nos. 2414, 2415.

1. CRIMINAL LAW ⬅⟾508(3)—PERSONS JOINTLY INDICTED—COMPETENCY AS
   WITNESS.
       Under Act March 16, 1878, c. 37, 20 Stat. 30 (Comp. St. 1916, § 1465),
   providing that in the trial of indictments and informations the person
   charged shall, at his own request and not otherwise, be a competent wit-
   ness, any of the defendants jointly indicted and tried may, at his own re-
   quest, testify on behalf of the government against his codefendants.
2. CRIMINAL LAW ⬅⟾700—DISCLOSURE OF WITNESSES—CODEFENDANTS.
       While there is no impropriety in the government offering immunity to
   defendants for testifying against their codefendants, such agreement must
   not be employed for the purpose or with the probable effect of embarrass-
   ing other defendants in the conduct of their defense by leading them to
   believe that their codefendants are in good faith making a defense; and
   where the government had promised immunity to two of the defendants
   on trial, and from the first was intending to use them as witnesses, the
   prosecutor should have stated the facts, and might with propriety have
   asked a severance, and his failure to do so would require a setting aside
   of the judgment if any harm resulted.
3. CRIMINAL LAW ⬅⟾1166½(7)—HARMLESS ERROR—SUSTAINING CHALLENGES
   TO JURORS.
       Where two of the defendants on trial had been promised immunity for
   testifying against their codefendants, and had no real interest in the de-
   fense, the sustaining of a peremptory challenge by their counsel to a ju-
   ror was not prejudicial to their codefendants, as a defendant has no right
   to a trial by any particular jurors, and if the juror taking the place of
   the one excused was objectionable he might have been challenged for
   cause or peremptorily.
4. CRIMINAL LAW ⬅⟾1171(1)—HARMLESS ERROR—CONDUCT OF PROSECUTOR.
       On the trial of four defendants, two had been promised immunity for
   testifying against their codefendants, but the prosecutor did not disclose
   this fact or ask for a severance.  The attorney for the other defendants
   suspected from the start that the defendants promised immunity would
   testify for the government, and was not tricked into any harmful co-op-
   eration with them in making the defense.  While one of the defendants
   promised immunity was permitted to remain in the courtroom while other
   witnesses were testifying, the witnesses who preceded him testified to
   nothing bearing on the conspiracy as to which he was a witness.  Held,
   that the failure of the prosecutor to disclose that immunity had been
   promised to such defendants, and that they would be witnesses for the
   government, was not prejudicial.
5. PROSTITUTION ⬅⟾1—TRANSPORTATION FOR PURPOSE OF PROSTITUTION—ELE-
   MENTS OF OFFENSE.
       Where there was evidence that defendant, while seeking inmates for a
   house of prostitution in Gary, Ind., was told of two girls in Chicago, and
   requested his informant to send them to Gary, giving his informant $5
   with which to pay their fare, and with the money so provided the girls
   were transported from Chicago to Gary, defendant was guilty under the
   White Slave Traffic Act, June 25, 1910, c. 395, 36 Stat. 825 (Comp. St. 1916,
   §§ 8812–8819), if this evidence was true.
6. CRIMINAL LAW ⬅⟾510—TESTIMONY OF ACCOMPLICES—CORROBORATION—
   NECESSITY.
       A conviction may rest on the evidence alone of a coconspirator or ac-
   complice.

⬅⟾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**7.** CRIMINAL LAW ☞742(1)—QUESTION FOR JURY—CREDIBILITY OF WITNESSES.

Though the only witness who testified to defendant's complicity in the transportation of women for purposes of prostitution was a depraved and shameless trafficker in women for revenue, his testimony was not, as a matter of law, insufficient to sustain a conviction, where other witnesses testified that defendant was engaged in running bawdyhouses, and hence had the motive and interest to do the things the witness said he did.

**8.** PROSTITUTION ☞1—TRANSPORTATION FOR PURPOSE OF PROSTITUTION—ELEMENTS OF OFFENSE.

Where girls were sent from Chicago to Gary, Ind., to enter a house of prostitution, a person advancing or giving them money to pay their taxi fare from the depot in Gary to the house of prostitution was not guilty of an offense under the White Slave Traffic Act, the taxi ride not being interstate commerce.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Michael Heitler and Dolly Shaffner were convicted of an offense, and they each bring error. Judgment against Shaffner reversed and remanded with directions, and judgment against Heitler affirmed.

Plaintiffs in error, Michael Heitler and Dolly Shaffner, together with Mollie Epstein and Dave Rosensweig, were indicted for conspiracy to transport Rosie Frameovitz, in interstate commerce, for purposes of prostitution, from Chicago, Ill., to Gary, Ind., in violation of the White Slave Traffic Act. All were tried together. Epstein and Rosensweig were called as witnesses for the government, testifying against plaintiffs in error, and admitting their own complicity. All were found guilty. By consent of the government, a new trial was granted to Epstein and Rosensweig, and the indictment was nolle prossed as to them. At the same time plaintiffs in error were each sentenced to imprisonment for a year and a day. It is contended for plaintiffs in error that their codefendants, being on trial at the same time with them, were not competent witnesses at the instance of the government; that under the circumstances appearing there should have been a severance as to the testifying defendants; that there was no evidence whatever tending to connect Dolly Shaffner with any conspiracy to transport Rosie Frameovitz in interstate commerce; and that there was no substantial evidence showing beyond reasonable doubt the guilt of Heitler.

Benjamin E. Bachrach, of Chicago, Ill., for plaintiffs in error.

Charles F. Clyne and John H. Lally, both of Chicago, Ill., for the United States.

Before BAKER, MACK, and ALSCHULER, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above). [1] 1. In general, defendants on trial, if testifying at their own request, are competent witnesses for the government against their codefendants on trial with them. The act of Congress of March 16, 1878, provides that in the trial of indictments, informations, etc., the person charged shall at his own request, and not otherwise, be a competent witness, and that his failure to make such request shall not create any presumption against him. This act renders any of a plurality of defendants on trial competent to testify either in his own behalf, or on behalf of any codefendant, or the government, provided only that he testifies at his own request. Wolfson v. United States, 101

Fed. 430, 41 C. C. A. 422; Wigmore on Evidence, § 580, supports this view.

2. It is insisted that in fairness to plaintiffs in error, under the circumstances appearing, the government, at the beginning of the trial, should have stated that Rosensweig and Epstein were to be called as witnesses, and should have asked severance as to them. When the jurors were about to be examined on their voir dire, Mr. Bachrach, counsel for plaintiffs in error, stated to the court he had been informed that certain of the defendants were to testify for the government, and that if this was so they ought not to be permitted through their lawyer to participate in the selection of a jury which was in fact to try only plaintiffs in error. Mr. Lally, the assistant district attorney in charge of the prosecution, being asked if all the defendants were on trial, stated they were, but he neither affirmed nor denied that any of them were to testify for the government. It transpired that Mollie Epstein had no counsel, and the court thereupon appointed Mr. Hulbert, who was representing Rosensweig, to represent her also. After eight of the jurors had been accepted by the government and Mr. Bachrach, Mr. Hulbert peremptorily challenged one of them, who was accordingly excused. The first witness called was Mollie Epstein, and thereupon Mr. Bachrach asked the government to request a severance as to the defendants intended to be used as witnesses. The court said that, the jury having been sworn, there could be no severance, and Bachrach asked that Rosensweig be excluded from the room while the witnesses preceding him testified. He was informed by the court that Rosensweig, being a defendant on trial, could not be excluded. In this discussion, after the jury was sworn, and Epstein had been called as a witness, Mr. Lally first admitted Rosensweig was to testify for the government, stating, however, he was willing Rosensweig should be excluded from the courtroom while others testified, but making no reply to Bachrach's assertion that Rosensweig was to have immunity for testifying.

[2] From the record it is clear that the government must have intended from the first to use these defendants as witnesses, since without them no possible case of conspiracy was undertaken to be made out. It is likewise clear that immunity for testifying was, before the trial, promised Rosensweig. Although he denied it, his attorney Hulbert, called as a witness for the defense, testified that he made such an arrangement for Rosensweig with the government, and had told Rosensweig if he testified that would be all there would be to it. There is of course no necessary impropriety in making such an arrangement, nor in offering immunity in proper cases. These are matters which usually on behalf of the government rest primarily in the sound discretion and good judgment of its prosecuting officers, acting in good faith for the public interest. But such agreements must not be employed for the purpose, or with the probable effect, of embarrassing other defendants in the conduct of their defense, through leading them to believe that their codefendants are in good faith defending against the same charge, when in truth and to the knowledge of the prosecutor they are not. Under the facts indicated, and particularly with the

attention of the prosecutor challenged thereto, the prosecutor should frankly have stated in the beginning that the government expected to call these defendants as witnesses, and that Rosensweig had been promised immunity for his testimony. He might further, with entire propriety, before the trial began, have asked severance (which under the circumstances would undoubtedly have been granted) as to the defendants who were to testify, and thus have avoided the possible unfairness to the other defendants in leaving the court without discretion to separate witnesses who remain only in name as defendants on trial. If from the situation disclosed, the record did not leave it clear that no harm came to plaintiff in error through the prosecutor's failure to so disclose and to ask severance, it would be the duty of this court to set aside the judgment.

[3] But it so happens that the record shows these parties were not thereby prejudiced. The peremptory challenge of the juror on behalf of defendants who had no real interest in the defense was not harmful. It is the right of a defendant, not to have certain jurors to try his case, but only to have a fair and impartial jury. If the juror who took the place of the one so excused by Mr. Hulbert was legally objectionable, he might have been challenged for cause, and in any event, if for any reason unsatisfactory, might have been peremptorily excused by plaintiffs in error. No objection was made to him, and presumably he was a fair and impartial juror. A defendant is not in situation to complain of the retention of a juror whom he had power peremptorily to excuse. Nor. Pac. R. R. Co. v. Herbert, 116 U. S. 642, 6 Sup. Ct. 590, 29 L. Ed. 755; Pearce v. United States, 192 Fed. 561, 113 C. C. A. 33; So. Pac. Co. v. Rauh, 49 Fed. 696, 1 C. C. A. 416; People v. Gray, 251 Ill. 439, 96 N. E. 268; Hartshorn v. Ill. Valley R. R. Co., 216 Ill. 392, 75 N. E. 122.

[4] Mr. Bachrach's suspicion that the codefendants would testify for the government was voiced from the start; so it is not supposable that through reliance on the bona fides of their defense he was tricked into any harmful co-operation with them. Nor did their remaining as defendants on trial tend to mislead the jury as to the fact of promised immunity to Rosensweig, since, notwithstanding his denial of it, nevertheless it so clearly appeared that the jury could have entertained no doubt of it. As to the contention respecting Rosensweig's presence in court while the two government witnesses who preceded him testified, it appears that nothing to which these witnesses testified bore on the conspiracy itself, as to which Rosensweig was the only witness, and what he testified thereon could not have been suggested or influenced by what the two preceding him had testified.

[5] 3. It is earnestly urged for plaintiffs in error that the record shows no substantial evidence on which to base their conviction. It was testified that Heitler had long been interested in a house of prostitution in Gary, which his wife, Daisy Smith, was running, and of which Dolly Shaffner was for some months an inmate; that in March, 1916, Shaffner started another such house there, in which Heitler also had a proprietary interest; that Heitler had expressed a desire to procure girls as inmates for this new house, and that he was in-

formed at Chicago of Mollie Epstein and Rosie Frameovitz, both prostitutes, as available for such purpose; that he requested his informant to send them to the Shaffner house at Gary, but, being told that the informant had no money to pay their fare to Gary, he gave the informant $5 with which to pay their railroad fare to Gary, and that accordingly with the money so provided by Heitler they were transported by rail from Chicago to Gary. If this evidence is true, the charge against Heitler was unquestionably proved. Rosensweig was this informant, he alone testifying to this conversation with Heitler, and no witness corroborating or contradicting him in this respect.

[6] That conviction may rest on the evidence alone of a coconspirator or accomplice is now too well established to require discussion. Diggs and Caminetti v. United States, 220 Fed. 548, 136 C. C. A. 147; s. c., 242 U. S. 470, 37 Sup. Ct. 192, 61 L. Ed. 442; United States v. Giuliani (D. C.) 147 Fed. 598; Wigmore on Evidence, § 2056; Wharton, Crim. Ev. (10th Ed.) § 439; Hoyt v. People, 140 Ill. 588, 30 N. E. 315, 16 L. R. A. 239. Indeed, in that part of the charge to the jury which, at the request of Heitler's counsel, the court gave, it is properly stated "that a person accused of a crime may be convicted on the uncorroborated testimony of a person who comes and testifies that he or she was his or her accomplice in the commission of the crime charged."

[7] 4. But the contention is that the uncontroverted evidence shows Rosensweig to be so absolutely bad that nothing he might say by way of testimony, standing alone, could properly be considered as substantial evidence from which a jury was warranted in finding beyond reasonable doubt that the alleged conspiracy was proved. Rosensweig's own testimony stamps him as the vilest of the vile—a trafficker in unfortunate females for the revenue he may derive from peddling them in public prostitution. Into business more infamously foul the male of the species never entered. Heitler was of that same despicable ilk with Rosensweig, proved so by evidence wholly aside from Rosensweig—ten witnesses, good, bad, and indifferent, from whose testimony the jury was well warranted in concluding that Heitler, staying in Chicago, was for profit to himself running these two bawdyhouses at Gary, going there frequently to get his share of the returns.

Rosensweig's story, depraved and shameless though it brands himself, is not inherently improbable or unreasonable as relating to one like Heitler, whom other evidence shows to be a person who had the motive, and to whose interest it was to do the very things which Rosensweig said he did. The story of the conspiracy was wholly uncontradicted. Of its truth or falsity the jury which heard and saw the witness was best judge. And since, if true, the evidence was sufficient to convict Heitler of the conspiracy charged, and by the verdict of guilty it is evident the jury believed it true, we cannot as a matter of law say there appears no substantial evidence on which to base the verdict against Heitler. In the case of Sykes v. United States, 204 Fed. 909, 123 C. C. A. 205, which is urgently pressed upon us as strikingly parallel, the Court of Appeals of the Eighth Circuit reversed a judgment of conviction on the ground that there was no substantial

evidence showing guilt beyond reasonable doubt. The only witness there implicating the defendant Sykes was Mrs. Callahan, self-confessed participant in the crime. But from the opinion it appears that Sykes was theretofore a man of good repute, that she was contradicted in her implication of Sykes by Sykes himself and by two others who were confessed accomplices in the alleged robbery, and that at other times the witness had under oath given the details of the crime without in any way implicating Sykes. Nothing appears in that case which, when here applied, conflicts with the foregoing conclusion as to Heitler.

[8] Dolly Shaffner's case is quite unlike Heitler's. Rosensweig did not purport to connect her with any conspiracy to transport Rosie Frameovitz in interstate commerce. Rosie made two trips to Gary, about three weeks apart, the first time remaining only a day. But whatever evidence there is of a conspiracy to unlawfully transport her in interstate commerce applies to the first trip, and not the second. All the record shows with reference to Shaffner respecting the first trip is that after Rosie and Epstein reached Gary pursuant to the conspiracy to transport them there, they rode in a taxi from the railroad depot to Shaffner's place in Gary, where Shaffner advanced or gave them money to pay their taxi fare. Surely this taxi ride, wholly within the state of Indiana, did not of itself involve interstate commerce. Nothing whatever appears in the record to connect Shaffner with any plan or conspiracy to transport Rosie from Chicago to Gary, or to show that she had knowledge of any plan or intention on the part of anybody to so transport her in interstate commerce, or that she knew or had reason to believe that Rosie was coming to Gary. As to the second trip, there is evidence that Rosie phoned Shaffner from Chicago that she was coming to Gary, but there is no proof in the record to implicate Shaffner in any conspiracy to transport Rosie from Chicago to Gary at that time.

The judgment against Dolly Shaffner is reversed, and as to her the cause is remanded, with direction to grant a new trial. The judgment against Michael Heitler is affirmed.