# WILLIE KINNARD *v.* STATE OF MARYLAND

[No. 24, April Term, 1944.]

*Decided June 13, 1944.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, and BAILEY, JJ.

*Joseph Rosenthal* and *Leo. M. Alpert,* for appellant.

*J. Edgar Harvey, Assistant Attorney General,* and *Thomas N. Biddison, Assistant State's Attorney for Baltimore City,* with whom were *William C. Walsh, Attorney General,* and *J. Bernard Wells, State's Attorney for Baltimore City,* on the brief, for appellee.

GRASON, J., delivered the opinion of the Court.

The grand jury of the City of Baltimore returned to the Criminal Court of that city two indictments charging Willie Kinnard and James E. Evans, among other criminal offenses, with the crime of larceny. They elected to

be tried before the Court. The cases were tried together, resulting in a verdict of guilty. Sentence was imposed as to each prisoner in each case, of nine years in the penitentiary, to run concurrently.

These men, while driving an automobile in the State of Virginia, were halted by a motorcycle policeman of that State. Evans was driving the car at the time. He got out of the car and walked around to its right where the policeman was standing. He exhibited to the officer his registration card and when asked for his driver's license walked to the left side of the car and, with the automobile between himself and the officer, fled. He was subsequently apprehended and turned over to the authorities of this State. After Evans fled, the officer inspected the rear of the car. It contained fifteen tires and eight tubes. The back seat had been removed and the tires and tubes were covered with canvas. Later "Kinnard ran away but was caught". In answer to the question: "They shot over your head, didn't they?" he answered, "I don't know which way they shot. I was down in the ditch." He, too, was delivered to the Maryland authorities. He told the Virginia officer he didn't know the man that was with him. He testified at the trial that Evans called at his house and asked him to go on a ride to Virginia, and requested that he leave the back seat of his car in Kinnard's house. It was found by the police in a cupboard in his house. It is clear that the tires and tubes were not in the car at the time the back seat was removed. Kinnard denied any knowledge of the larceny. He stated he went along just for the ride, enticed by some whiskey that Evans possessed. The trial judge is of opinion that Kinnard, upon his evidence, together with the testimony of his mother, should have been acquitted. At the close of the State's case Evans took the stand, evidently confessed guilt, involved Kinnard in a racket operated jointly by them, of stealing automobiles, dismantling them, carrying the tires and tubes taken from the stolen automobiles to out of State markets and selling them. To this evidence there was no objection by counsel for Kin-

nard, nor was there a motion to limit this testimony solely to Evans' case. The trial judge, after imposing sentence, upon close and careful consideration of the question, confirmed the impression he entertained at the trial, that Evans, being a co-indictee, was incompetent to give testimony against Kinnard. A petition to strike out the judgment and sentence was filed by Kinnard, which was overruled, and it is from this ruling that the appeal is taken.

We are asked by both the State (appellee) and the accused (appellant) to rule on the question whether one co-defendant is competent to testify against another co-defendant, on trial together, under a joint indictment.

"The common law excluded as witnesses parties to the record and persons interested in the result of the trial. The rule was applied in all its strictness to civil cases, preventing even a nominal plaintiff from testifying; and in criminal cases a defendant at common law could not be a witness for himself. He was permitted in capital cases, and, according to some authorities, in cases not capital, to make an unsworn statement to the jury, but not as a witness, and he was not subject to cross-examination. *Whart. Cr. Ev.* (9th Ed.), p. 359, Sec. 427. A defendant, at common law, was ordinarily not permitted to be a witness for or against his co-defendant. The rule however, was not applied with all the strictness of the similar rule in civil cases. If the co-defendant pleaded guilty, he was a competent witness, before sentence was pronounced on him to make him infamous, and to disqualify him, although nominally he was a party to the record. *Id.*, p. 372, Sec. 439, note 6. If he were acquitted, or if the government dismissed the case as to him, he was made a competent witness." *Wolfson v. United States*, 101 F. 430, 435.

In 1876 the legislature passed Chapter 357, which is as follows: "In the trial of all indictments, complaints and other proceedings against persons charged with the commission of crimes and offenses, and in all proceedings in the nature of criminal proceedings in any court of this

State, and before a justice of the peace or other officer acting judicially, the person so charged shall at his own request, but not otherwise, be deemed a competent witness; but the neglect or refusal of any such person to testify shall not create any presumption against him." Annotated Code of Md. 1939, Art. 35, Sec. 4.

Two years after the passage of this statute Congress of the United States enacted the following: "In the trial of all indictments, informations, complaints, and other proceedings against persons charged with the commission of crimes, offenses, and misdemeanors, in the United States courts, Territorial courts, and courts-martial, and courts of inquiry, in any State or Territory, including the District of Columbia, the person so charged shall, at his own request but not otherwise, be a competent witness and his failure to make such request shall not create any presumption against him." 28 U.S.C.A. Sec. 632.

It appears that the Maryland act and the act of Congress are in effect identical. This Court has not interpreted the Maryland act but the Federal act has been before the Federal Courts on numerous occasions. The learning of those Courts, and the identity of the two acts, would naturally cause this Court to give careful consideration to the opinions in the Federal cases, if not to follow them. In the case of *Wolfson v. United States, supra,* speaking of the Federal statute, the Court said: "This statute in terms makes a defendant a competent witness. The statute does not say 'a competent witness for himself.' It does not say 'a competent witness for the government.' He is made simply 'at his own request, but not otherwise,' a competent witness. It would clearly be improper for the government, while he was on trial, in the absence of a request on his part, to call him as a witness. The purpose of the law was to make defendants competent witnesses, but at the same time to preserve to them the right to remain silent without prejudice. When any defendant chooses to testify, the statute permits him to do so. It does not matter whether his testimony is for or against himself, or for or against his

co-defendant. The only limitation in the statute is that he shall not be made a witness except on his own request. Being sworn as a witness at his own request, he is amenable, generally, to the rules governing other witnesses. He could testify against or for his co-defendant on trial with him, because the only reason why he could not do so at common law was that he was a party to the record, and interested in the case. In other words, the only common-law reason for his exclusion was that he was a defendant also on trial. The statute clearly removes that objection. The fact that two defendants were on trial does not prevent the statute applying."

The Supreme Court of the United States denied a petition for a writ of *certiorari* in this case. 180 U.S. 637, 45 L.Ed. 710.

The Wolfson case was decided in April, 1900, and it has been followed by the Federal Courts ever since. *Ryan v. United States,* 216 F. 13; *Heitler v. United States,* 244 F. 140, 144; *Degnan v. United States,* 271 F. 291; *Rowan v. United States,* 281 F. 137; *Brown v. United States,* 56 F. 2d 997; *Freeman v. United States,* 96 F. 2d 13; *United States v. Beck,* 118 F. 2d 178.

In 102 F. at page 134, there is a dissenting opinion by Judge Boarman, in the Wolfson case, *supra.* The trial judge agrees with this dissenting opinion. But this dissent has stood alone and lonely for forty-four years and it does not represent the Federal law. We would hesitate to override all of the Federal cases on this subject, some of them having been approved by the Supreme Court of the United States by a denial of a writ of *certiorari,* and adopt this dissenting opinion as expressing the law of this State.

The following cases are in line with the Federal decisions. *Commonwealth v. Brown,* 130 Mass. 279; *State v. Barrows,* 76 Me. 401, 49 Am.Rep. 629; *State v. Thaden,* 43 Minn. 325, 45 N.W. 614; *Ward v. State,* 175 Ark. 870, 300 S.W. 451; *Collins v. State,* 37 Ariz. 353, 294 P. 625; *Rounds v. State,* 171 Tenn. 511, 106 S.W. 2d. 212; *Morris v. State,* 68 Okl.Cr. 147, 96 P. 2d 88; *State v. Smith,* 86

N.C. 705; *Smith v. People,* 115 Ill. 17, 3 N.E. 733; *Collins v. People,* 98 Ill. 584, 38 Am.Rep. 105; *People v. Lawson,* 331 Ill. 380, 163 N.E. 149; *Williams v. State,* 42 Fla. 205, 27 So. 898.

This subject is treated by Mr. Wigmore in his work on Evidence, 3rd Ed., Vol. II, Sec. 580. He concludes that section with this statement: "There ought today to be no further question in any jurisdiction (except Georgia) that there is no limitation whatever on the qualification of a co-indictee or co-defendant to testify either for or against the accused."

The following cases have been cited as authority for the position taken by appellant: *State v. Roberts,* 15 Mo. 28; *State v. Chyo Chiagk,* 92 Mo. 395, 4 S.W. 704; *State v. Reppley,* 278 Mo. 333, 213 S. W. 477; *State v. LaRocca,* 168 La. 204, 121 So. 744, 746.

In the case last cited it was held: "If a co-defendant charged and tried together with his co-defendant for the same alleged offense takes the stand as a witness, his testimony should be considered by the jury only as it relates to himself. The testimony of one co-defendant should not be considered by the jury either against or in favor of the other co-defendant." Judge O'Neill filed a lengthy dissent to this holding.

From a review of the authorities it appears that under a statute similar to ours we have two leading cases construing the same. The first case is *Wolfson v. United State, supra,* in which there was filed a dissenting opinion. This authority construes the statute as removing incompetency of witnesses who are parties of record or who may be interested in the result of a trial, and renders the testimony of a co-defendant competent for all purposes. He cannot be made to testify without his consent, and no presumption can be indulged against him if he does not testify. In the event he testifies, the weight of his testimony is to be tested by the same means as is the evidence of any other witness. It is in line with the general tendency of the courts throughout this country. The other case is *State v. LaRocca, supra* (in which there was a

strong dissenting opinion), which holds to the contrary. Under this decision the evidence received in the case at bar is incompetent. The first decision has been followed by an unbroken line of Federal cases and is supported by the preponderance of the decisions in the appellate courts throughout this country. We hold that the admission of the testimony of one co-defendant against another co-defendant, in a criminal case, is competent.

The trial court, in its opinion, says that the State closed its case. Then the evidence on behalf of Kinnard was offered, and when concluded, counsel for Kinnard closed his case. The evidence on behalf of Evans was then produced. It is contended, when Kinnard closed his case, the proceeding as to him was ended. With this conclusion we do not agree. These traversers were jointly indicted. Manifestly, the State proceeded with the prosecution and when its evidence was in, closed its case. Each traverser had a right to testify on his own behalf and to produce witnesses. This the prisoners did. The case, therefore, was not concluded until Evans offered testimony on his behalf. As we have observed, there was no objection or motion of any kind interposed by counsel for Kinnard and the judge was free to consider all of this testimony in determining the guilt or innocence of the accused. Even had Kinnard objected to the testimony of Evans the objection should have been overruled.

We have given our opinion on the question presented. There remains a word to be said about this appeal.

The petition to strike out the judgment and sentence, to which we have referred, is as follows:

"1. That on the 29th of November, 1943, your petitioner was tried on the charge of larceny by Your Honor and found guilty; he was sentenced to serve nine years in the Maryland Penitentiary.

"2. That said judgment was incorrect and it constituted a miscarriage of justice.

"3. That there was no legally sufficient evidence to support the said judgment and sentence thereon.

"Therefore, your Petitioner respectfully prays that an Order be passed by this Honorable Court declaring that the judgment and sentence passed upon the Defendant be stricken out."

In the case of *Myers v. State*, 137 Md. 482, 487, 113 A. 87, 88, Judge Offutt dealt with two motions that were identical in form and substance. One was called a "motion for a new trial", and the other was denominated a "motion in arrest of judgment". He said: "This motion, although described as a 'motion in arrest of judgment,' is really the ordinary motion for a new trial applied to new and strange ends, and is apparently intended to operate in some way not clearly apparent, as a demurrer to the evidence."

The only difference in this case and the one that Judge Offutt dealt with is that in the case at bar we are asked to strike out a judgment and sentence for reasons that support a motion for a new trial. It is well settled that no appeal lies from the action of a court in overruling a motion for a new trial. *Myers v. State, supra; Willie v. State*, 153 Md. 613, 615, 139 A. 289, 291.

If litigants could change what is a "motion for a new trial" to a "petition to strike out a judgment and sentence", by simply styling it as such, they could, by such legal legerdemain, appeal to this Court from that which is not appealable.

In *Willie v. State, supra,* it is stated: " 'the reason for the rule in this jurisdiction denying appeals from orders refusing motions for new trials applies equally in cases of motions to strike out judgments after full trial,' and that 'the finding of the trial court on such a motion should not be set aside, unless the appellate court cannot escape the conviction, not only that the verdict may have been influenced by the matters complained of, but that it probably was so influenced'."

The trial judge was influenced by the testimony of Evans in determining the guilt of Kinnard. He thinks he made a mistake. We think he was correct.

The judgment and sentence in this case was pronounced on November 29, 1943. Rule 25, Section 1 of this Court, provides: "In criminal cases an appeal or writ of error allowed by law shall be taken within ten days from the date of the judgment or sentence." *Ivrey v. State,* 178 Md. 638, 15 A. 2d 910; *Feldstein v. State,* 181 Md. 662, 28 A. 2d 471.

The so-called "petition to strike out the judgment and sentence" in this case was filed on January 8, 1944, over a month after the time for an appeal in this case had expired, and it was taken from a non-appealable order. If we recognize appeals prosecuted in the manner as the one in this case, the rules of this Court and the law applicable to appeals will be frustrated. We have not enforced our rules in some criminal cases where death sentence was imposed. We hope in the future we will not be put to such extremity. In all other criminal cases where the appeal is irregular or taken from a non-appealable ruling, this Court will dismiss the appeal. We will decide cases when properly presented.

Finding no error in the ruling of the Court below, the judgment will be affirmed, with costs to appellee.

*Judgment affirmed, costs to appellee.*