# WAYNE COURTENEY MURRAY *v.* STATE OF MARYLAND

[No. 829, September Term, 1976.]

*Decided April 13, 1977.*

The cause was argued before GILBERT C. J., and MOYLAN and LISS, JJ.

*Andrew Jay Graham*, with whom were *Kramon & Graham*, on the brief, for appellant.

*Gilbert Rosenthal, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, William A. Swisher, State's Attorney for Baltimore City*, and *John Denholm, Assistant State's Attorney for Baltimore City*, on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

This appeal raises an interesting question of first impression. Does one codefendant in a joint trial, by resting his case without putting on a defense after the State has rested its case, acquire a vested right in foreclosing any other evidence being received against him for any other purpose? May he, by his act of resting, freeze the status quo of proof? For reasons to be discussed, the answer is, "No."

The appellant, Wayne Courteney Murray, was convicted by Judge Martin B. Greenfeld, sitting without a jury, in the Criminal Court of Baltimore of possession of narcotics and possession of narcotics paraphernalia. Upon this appeal, he raises four contentions:

(1) That his motion for a judgment of acquittal at the conclusion of the State's case was erroneously denied;

(2) That the evidence was not legally sufficient to sustain the convictions;

(3) That his motion for severance was erroneously denied; and

(4) That no evidence should have been received against him after he had rested his case.

### The Denial of the Motion for Judgment of Acquittal

The State's case consisted of the testimony of Detective Robert Murray, a former officer of the Baltimore City Police Department. On July 18, 1975, Detective Murray went to 1903 N. Forest Park Avenue, in Baltimore, to execute a search and seizure warrant for narcotics. The place to be

searched was the apartment of Charles Jeter. Using a steel battering ram to crash through the heavy barricades, Detective Murray and the searching party entered the apartment.

James Cromer, a codefendant, was standing in the middle of the kitchen. He held in his hand a plastic-coated playing card which Detective Murray testified was customarily used for purposes of processing heroin. Jeter, clad in pajamas, was seen coming out of one bedroom. The appellant was found in that bedroom, lying across the foot of the bed fully clothed. The time was 5:45 a.m.

From the kitchen, where Cromer was observed, were recovered brown powder which was found to be heroin, a sifter, the plastic-coated playing card, four measuring spoons and a Scotch Tape dispenser. More heroin was found in a pair of pants lying across one of the chairs in the dining room area.

On top of a dresser in the room where the appellant was apprehended was a paper towel containing three tinfoil packets of heroin. From a dresser drawer in that room was recovered one cardboard box containing empty glassine bags and another box containing 247 glassine bags full of heroin. From the top of a shelf in the bedroom closet were recovered spoons, more glassine bags, playing cards, sifters, rubber bands, four rolls of Scotch Tape and more heroin. Detective Murray testified that the heroin seized from the apartment was of a strength of 14.6%, whereas the usual percentage for the heroin sold upon the street was from 3 to 5%.

Under the guidelines of *Folk v. State*, 11 Md. App. 508, 275 A. 2d 184, we have no difficulty in concluding that sufficient evidence of joint, exclusive control had been presented to justify the denial of the motion for a judgment of acquittal.

### The Legal Sufficiency of the Evidence

As we look at the evidence of guilt under the microscope of Maryland Rule 1086 which permits us to set aside the verdict of the court if it was clearly erroneous, it follows that if the trial judge was correct in not granting the motion for a

judgment of acquittal at the end of the State's case, he, *ipso facto*, was not clearly erroneous in arriving at a verdict of guilty. The proof which was adequate at the earlier stage was still present at the later stage. Where, as here, the defense rested immediately following the ruling upon the motion, nothing was added to or subtracted from the proof following that moment. The quantitative and qualitative measurement is, therefore, the same and the establishment of legal sufficiency for one purpose is the establishment of legal sufficiency for all purposes. *Williams v. State*, 5 Md. App. 450, 459, 247 A. 2d 731; *Metz v. State*, 9 Md. App. 15, 23, 262 A. 2d 331.

### The Denial of a Severance

The appellant does not seriously contend that under Maryland Rule 734, there was not a proper joinder of trial in the first instance. A single State's witness, now no longer with the force and testifying at some personal inconvenience, was describing a single search and seizure implicating codefendants charged with the same offenses. The joinder was proper in all regards. *Lewis v. State*, 235 Md. 588, 202 A. 2d 370; *Mason v. State*, 12 Md. App. 655, 280 A. 2d 753; *Peterson v. State*, 15 Md. App. 478, 292 A. 2d 714. He rather urges upon us the proposition that a mistrial should have been declared because prejudice became manifest when he elected not to put on a defense and his codefendant Jeter elected to go forward with a defense. His claim of prejudice is without substance for the testimony of Jeter, which exculpated in part but also inculpated in part the appellant, was, in the last analysis, competent testimony. There was no problem under *Bruton v. United States*, 391 U. S. 123, 88 S. Ct. 1620, 20 L.Ed.2d 476 (1968), since Jeter testified under oath and was available to his codefendants and to the State alike for full and probing cross-examination. Although under other trial sequences, the appellant might have been lucky enough to have Jeter invoke the privilege against compulsory self-incrimination and not testify, the appellant has no vested right in keeping out competent testimony. The prejudice which he claims was manifest was not manifest at all.

Jeter could theoretically have been called to the stand during the State's case in chief and could theoretically have elected not to invoke the privilege against compulsory self-incrimination. Jeter's testimony would certainly have been competent against the appellant. Alternatively, the State could have nol-prossed all charges against Jeter and elected to use him as a State's witness against the appellant. Again, his testimony would have been indisputably competent. Alternatively, the State could have tried Jeter first and convicted him and waited until the appellate process was finally concluded before calling him to the stand at the appellant's later trial. Again, his testimony would have been competent. That the indisputably competent testimony happened to come through the medium of defense testimony at a joint trial has no influence upon the overriding consideration that the testimony was competent and that the appellant had no right to be shielded from it. *Poff v. State,* 3 Md. App. 289, 292, 239 A. 2d 121.

## The Resting of the Appellant's Case

The appellant's most novel point is his suggestion that when the State rested and he then rested without putting on a defense, the proof against him was frozen. Following the appellant's announcement that he had rested, Jeter testified in his own defense. Although in large measure exculpating the appellant from any participation in the narcotics traffic, Jeter did testify that the appellant had a preexisting relationship with Cromer. In announcing his verdict, the judge took the evidence of that prior relationship into consideration. The appellant assails this as evidence of the prejudice he was erroneously subjected to.

In the precise procedural posture of this case, the situation is without apparent precedent. By analogy to cognate precedents and by the exercise of pure reason, however, we have no difficulty whatsoever in resolving this issue against the appellant.

The Court of Appeals dealt with a somewhat similar situation in *Kinnard v. State,* 183 Md. 377, 38 A. 2d 92. In that case, distinguishing it slightly from this one, each of two codefendants testified in his own defense. Kinnard

proceeded first and then rested. Following that, his codefendant Evans took the stand and his testimony damaged Kinnard. Kinnard contended that the testimony of Evans came in after Kinnard's case had been concluded and should not, therefore, have been received. The Court of Appeals rejected the contention, saying at 183 Md. 383:

> "The trial court, in its opinion, says that the State closed its case. Then the evidence on behalf of Kinnard was offered, and when concluded, counsel for Kinnard closed his case. The evidence on behalf of Evans was then produced. It is contended, when Kinnard closed his case, the proceeding as to him was ended. With this conclusion we do not agree. These traversers were jointly indicted. Manifestly, the State proceeded with the prosecution and when its evidence was in, closed its case. Each traverser had a right to testify on his own behalf and to produce witnesses. This the prisoners did. The case, therefore, was not concluded until Evans offered testimony on his behalf. As we have observed, there was no objection or motion of any kind interposed by counsel for Kinnard and the judge was free to consider all of this testimony in determining the guilt or innocence of the accused. *Even had Kinnard objected to the testimony of Evans the objection should have been overruled.*" (Emphasis supplied)

Fundamental rights will not turn upon so random and fortuitous a circumstance as that of who goes first. If a series of codefendants testify, each exculpating himself as much as possible and shifting the burden of guilt to his brethren, it would work an absurdity to say that each is subject to the testimonial perils that preceded his own testimony but is shielded from all proof which follows from the lips of codefendants. What would follow would be a race to the witness stand and all but the winner would claim prejudice. Such is obviously not the case, for the trial of codefendants, properly joined, is an indivisible unit. The trial is not over until all parties have finally rested. The

present appellant's claim of double jeopardy is not well taken for what is involved is not double jeopardy at all but only the prolongation of the initial jeopardy. That is the issue and, for reasons now being discussed, that prolongation of initial jeopardy is not improper.

The situation is not different when one or more codefendants rest without putting on a defense. The appellant's position, if valid, would work the random absurdity that if Jeter had put on his defense first and then the appellant had rested, the appellant could be properly pinioned by the testimony of Jeter but that the situation would be reversed if their order of presenting defenses (or resting, as the case may be) had been reversed. The same absurdity would exist if Defendant A rests, Defendant B testifies and then Defendant C rests. The appellant's position would have B's testimony properly receivable against Codefendant C, who rested late, but not receivable against Codefendant A who rested early.

By resting without putting on a defense, the appellant was entitled to one right and one right alone. He was entitled to have the ruling on his motion for a judgment of acquittal measured according to the evidence then down upon the table. If that evidence had happened to be insufficient, the appellant would be entitled to a reversal notwithstanding later evidence which might have shored up the defects. As we have already held, however, the evidence of guilt at that stage was sufficient for the trial judge to have denied the motion. For purposes of what evidence could properly be considered by the fact finder in arriving at the ultimate verdict, each codefendant at a trial properly joined is susceptible to all of the evidence properly received before the ultimate closing of the entire case and as to all parties.

*Judgments affirmed; costs to be paid by appellant.*