ULMER *v.* THE STATE.*

An indictment will not be quashed because found at an adjourned term of the Circuit Court.

An accessory before the fact may be indicted and tried before the principal; but the indictment must aver the commission of the offense by the principal. The indictment in this case contains that averment. See opinion.

It is necessary, in an indictment charging an offense committed without the statute of limitations, to show by averments that the case falls within the exceptions of the statute.

The time of absence from the state or of concealment, of the defendant, which may occur during the period of limitation fixed by the statute, must be added to that period.

*Quære,* how the clause of the statute in relation to the concealment of the criminal, is to be construed.

The jury may convict upon the testimony of an accomplice.

APPEAL from the *Lagrange* Circuit Court.

PERKINS, J.—Indictment, conviction, and sentence to the state prison.

The indictment is in these words:

"State of *Indiana, Lagrange* county, ss.        -

"State of *Indiana* v. *George T. Ulmer.*

"In the *Lagrange* Circuit Court, *October* term, *A. D.* 1858, adjourned to *January, A. D.* 1859.

"The grand jurors of the state of *Indiana,* duly impanneled, sworn, and charged, in said Court, at said term, to inquire within and for the body of said county of *Lagrange,* upon their oath present and charge that one *Asa Crape* and one *William Jones,* late of said county, on the 12th day of *September,* in the year of our Lord eighteen hundred and fifty-six, at and in the county of *Lagrange* aforesaid, two horses of the value of one hundred dollars each, and one horse, commonly called a gelding, of the value of one hundred dollars, the personal goods and chattels of one *Ralph Selby,* then and there being found, did unlawfully and feloniously steal, take, lead, ride, and drive away, contrary to the form of the statute in such case

_____

* A petition for a rehearing of this case was filed on the 11th of *January,* and overruled on the 1st of *May,* 1860.

made and provided, and against the peace and dignity of the state of *Indiana.*

"And the said grand jurors further present and charge that *George T. Ulmer,* late of the county aforesaid, before the committing of the felony and larceny aforesaid, to-wit, on the 10th day of *September,* in the year last aforesaid, at and in the county of *Lagrange* aforesaid, did unlawfully and feloniously incite, move, procure, encourage, counsel, hire, and command the said *Asa Crape* and the said *William Jones,* to do and commit the said felony and larceny in manner and form aforesaid.

"And the said grand jurors do further present and charge that the said *George T. Ulmer,* at and from the day and year last aforesaid, did conceal the fact of said crime and offense by him committed in manner and form as aforesaid, for the period and time of one year from and after the commission thereof by him, to-wit, on and from the 10th day of *September, A. D.* eighteen hundred and fifty-six, to the 10th day of *September,* eighteen hundred and fifty-seven.

"And the said grand jurors do further present and charge that the said *George T. Ulmer,* after the commission of said offense by him committed as aforesaid, has been absent from the state of *Indiana* aforesaid for the period and time of five months, to-wit, from the thirtieth day of *January, A. D.* eighteen hundred and fifty-eight, to the first day of *July, A. D.* eighteen hundred and fifty-eight; and that the said *George T. Ulmer* has concealed himself so that process could not be served upon him for the period and time of five months after the commission of said offense by him committed as aforesaid.

"And so the jurors upon their oaths aforesaid do say and charge that the said *George T. Ulmer* did commit the crime aforesaid, in manner and form aforesaid, contrary to the statute in such case made and provided, and against the peace and dignity of the state of *Indiana.*

"*Robert Parrott,*
"Special Prosecuting Attorney."

This indictment was found at an adjourned term of the

*Lagrange* Circuit Court; and it is contended that for that reason it should have been quashed; but we think otherwise.

It is provided by an act of 1855 (Acts of 1855, p. 70), "that if at the close of any term of the Circuit Court of any county, or when it shall become necessary or proper for said Court to adjourn from any cause, the business pending therein shall not be finished, it shall be lawful for such Court to adjourn until some other certain time, to be specified in the adjourning order, of which public notice shall be given in some manner, to be specified by said Court; and at such time, such Court shall meet and continue in session so long as the business shall require, and such adjourned session shall be deemed a part of the regular term of such Court."

And the 2 R. S. p. 363, provides that "whenever the grand jury is dismissed before the final adjournment, they may be summoned to attend again at the same time, if necessary; and if a full jury do not attend, the number may be completed from the bystanders."

It thus appears that criminal business may arise, and be taken cognizance of, at any time during the term; and, whenever it does so arise, may be treated as unfinished business of the term. This construction violates no rule of law, and tends to promote speedy trials of persons accused of crime—a result called for alike by the interest of the accused, and the public policy of the state.

It is claimed that the allegations in the indictment are insufficient. *Ulmer* is indicted as an accessory before the fact. He may be thus indicted and tried, before the indictment and conviction of the principal. 2 R. S. pp. 422, 423. But the indictment against the accessory must aver the commission of the offense by the principal, as well as the counseling of it by the accessory. It is insisted that the indictment in this case does not contain such averments, but we think it does. 1 Arch. Crim. Pl., p. 16. The time at which the offense is charged in the indictment to have been committed is without the statute of limitations; but the case is alleged, and shown by

averments, to fall within the exceptions in the statute.
This is necessary in indictments, because, in criminal
cases, the defendant may avail himself of the statute of
limitations without pleading it. Ind. Dig., p. 364, § 31.—
Whart. Crim. Law, 4th ed., § 445.

And the only remaining point to be decided in the case
is, the construction to be given to the exceptions in that
statute in this state. The statute, with the exceptions, is
found on pp. 362, 363, 2 R. S., and provides that for trea-
son, murder, arson, and manslaughter, there shall be no
limitation; for offenses punishable by fine not exceeding
three dollars, the limitation shall be sixty days, and for all
other offenses, two years. But § 13 further provides that,
"if any person who has committed an offense, is absent
from the state, or so conceals himself that process cannot
be served on him, or conceals the fact of the crime, the
time of absence or concealment is not to be included in
computing the period of limitation."

Upon this statute, the counsel for the defendant below
argues thus:

"The statute of limitations contains three exceptions.
The first exception applies to a person who, being without
the state, commits an offense by an agent, or otherwise
within the state, and it applies to no other case. The evi-
dence in the record proves that *Ulmer*, at the time of the
commission of the crime, was in this county and state.
The second exception is equally unsustained by the evi-
dence. *Selby* swears that '*Ulmer* was missing from the
neighborhood about a year ago.' *Bevington* swears '*Ulmer*
went away some time in last *January*. * * * I was not
in the county when *Ulmer* went away; *Ulmer* told me in
jail that he left about the 22d of last *January;* he said
there was great excitement, and he left home for the rea-
son that if they attempted to arrest him, life would be
taken; that he heard a mob was coming to take him; that
he intended to come home as soon as he could safely do
so.' The above, selected from the whole record, is the
only evidence on this point; it shows that some seventeen
months after the larceny, *Ulmer* left his family and the

state for some five months; that he left not to avoid process, but he left to avoid being taken by a mob. It does not prove, or tend to prove, that he even attempted to conceal himself to avoid the service of process. Thus far as to these two exceptions in the statute, (without regard to whether the indictment be good or bad), the evidence does not make out a case under either of them. As to the first, as above stated, the evidence proves that *Ulmer* was in the state at the time the act was done. As to the second, there is no evidence even tending to prove the allegation that he concealed himself. But as to these two exceptions, the indictment is bad; it shows on its face that the statute had been running some sixteen months before *Ulmer* left the state; and the evidence shows that he and his family resided in this county for the last five years, and up to the time of the trial; that defendant, during that time, had been absent about five months under the circumstances, and for the purpose above stated. *Hern* swears that *Ulmer* has lived on *Pretty Prairie*, in this county, for some five or six years past. As to both of these exceptions, it is plain from the indictment, and also from the evidence, that the statute had been running some sixteen months, and the law is well settled, that 'when once the statute has begun to run, nothing stops its course.' See 4 Taunt. 516, 826·"

We think the counsel wrong in his construction of the statute. The language is, "who has committed," not who commits. We admit that under the *English* statute of limitations in civil cases, and under those of *Indiana*, prior to 1843, when the statute once commenced running it continued. This was the legal effect of a fair construction of the language of the statute. For example, that of this state of 1838, provided that "on all contracts," &c., "if the defendant shall be without the state when the cause of action accrued," &c. But in 1843, the phraseology of the statute was changed. The code of that year provides, p. 687, § 110, that "if, after any cause of action shall have accrued, the person," &c., "shall be absent," &c.; and such is substantially the language of the code of 1852, touching

civil actions. See 2 R. S. p. 77, § 216. The rule as to time, is, by the language of the statute, made the same in case of absence, as in that of concealment.

The provisions of the limitations of civil and criminal actions in our present code are very similar, and, we have no doubt, should both receive, on this point—that is, as to the absence being at the time, or after the act—the same construction. The time of absence from the state, of the defendant, or of his concealment, which may occur during the period of limitation fixed by the statute, must be added to that period. With such addition, the prosecution in this case is shown by the indictment, and was proved on the trial to be in time. See Whart. Crim. Law, 4th ed., § 445. The clause in relation to the concealment of the crime was doubtless suggested by that touching the concealment of a cause of action, but how it is to be construed, who can tell? There is no analogy between civil and criminal cases in this particular. Must there be a positive act of concealment, and must it relate to the crime, not to the person committing it?

The jury may convict upon the testimony of an accomplice. Ind. Dig., tit. Accomplice.

*Per Curiam.*—The judgment is affirmed with costs.

*A. Ellison*, for the appellant.

*J. E. McDonald*, Attorney General, for the state.