GINGERICH v. STATE OF INDIANA.

[No. 28,455. Filed December 30, 1948.]

*Roscoe D. Wheat* and *James W. Grimes,* of Portland, attorneys for Appellants. *Cleon H. Foust,* Attorney General, *Frank E. Coughlin,* First Deputy, and *Merl M. Wall,* Deputy Attorney General, for the State.

YOUNG, J.—This is an appeal from a final judgment of guilty in a case wherein appellant was charged with violating the Indiana compulsory school attendance law. Acts of 1921 General Assembly, ch. 132; §§ 28-501, et seq., Burns' 1948 Replacement.

Appellant is a farmer and a member of the religious sect known as the Old Order of Amish Mennonites. He lived with his wife and 13 children in Green Township, Jay County, Indiana. It appears that all of the public schools in Green Township had been abandoned and school children of that township attended the schools of Penn Township which adjoined. Appellant's son Joe, age 14 at the time of the proceedings herein considered, had graduated from the eighth grade of the Penn Township schools, and had been assigned to the high school at Pennville, which is located in Penn Township, Jay County, Indiana.

Appellant refused to send his son Joe to Pennville high school and thereupon an affidavit against him was filed in Jay Circuit Court, in which it was alleged in substance that the son Joseph Gingerich was a child 14 years of age and that appellant did "permit, compel or encourage" his son "to become and remain absent from the public schools of the district which the said son was by law required to attend." No motion to quash the affidavit was ever filed, nor was any question as to its sufficiency ever raised by a motion in arrest of judgment, or otherwise, either in the trial court or here upon appeal. The appellant went to trial upon this affidavit without objection. Even if defective the defects were waived by failure to file a motion to quash or in arrest of judgment. *Scherer* v. *State* (1917), 187 Ind. 15, 16, 116 N. E. 52; *Robinson* v. *State* (1916), 185 Ind. 119, 123, 124; 113 N. E. 306; *Boos* v. *State* (1913), 181 Ind. 562, 564, 565, 105 N. E. 117. If the evidence offered to support the affidavit was sufficient to show an offense the shortcomings of the affidavit need not be taken into account by this court on its own motion on appeal.

They will be considered cured by the finding of guilty by the court. 41 Am. Jur., Pleading, § 404, p. 572.

The appellant contends that Green Township constitutes the school district wherein he and his son reside and that because there is no school provided in Green Township he cannot be prosecuted for failing to send his son elsewhere. He also contends that one of the tenets of his church is that children shall not receive higher education but shall discontinue their education at the conclusion of the eighth grade, and that to compel him to send his son to high school is an unreasonable interference with his right as a parent to direct the upbringing and education of his children and an unconstitutional invasion of his religious liberty.

Upon trial appellant was found guilty and fined $200 and sentenced to the Indiana State Farm for 60 days, which was the maximum punishment provided by the statute under which appellant was prosecuted, and which punishment appellant contends is excessive and in violation of the provision of the Indiana Constitution which prohibits excessive fines and cruel and unusual punishments. Constitution of Indiana, Art. 1, § 16.

In Section 1 of the compulsory school attendance act, there appears the following language:

> "Every county and every city having an average daily attendance of fifteen hundred (1,500) or more children of school age, shall constitute a separate attendance district. . . ." § 28-501, Burns' 1948 Replacement.

In Section 5 of said Act there appears the following language:

> "Unless otherwise provided herein, every child between the ages of seven and sixteen years shall attend public school, or other school taught in the English language which is open to the inspection

of local and state attendance and school officers; and such child shall attend such school each year during the entire time the public schools are in session in *the school district in which such child resides.* . . ." (Our italics.) § 28-505, Burns' 1948 Repl.

In section 8 of Act there appears the following language:

"Every parent and guardian of any minor child or ward shall be held legally responsible for any violation of this act by such child or ward, unless such parent or guardian is not a party to such violation. . . ." § 28-508, Burns' 1948 Repl.

Section 17 of the Act (§ 28-517, Burns' 1948 Repl.) provides that any person who shall compel or encourage any minor to violate any of the provisions of the act above set out shall, upon conviction, be fined not less than $10 nor more than $200 or be imprisoned in the county jail not exceeding 60 days or both.

Our first task is to determine what is meant by the words "the school district in which such child resides," italicized in the above quotation from section 5 of the act. Appellant contends that the township constitutes the school district referred to and that, there being no schools in session there, he was not required to send his child to school. His counsel point to statutes which make townships both civil and school corporate entities, § 28-2401, Burns' 1943 Repl., and they also contend that the entire township, being a corporate school entity, becomes the school district referred to in said section 5, and cite *Miller* v. *State* (1921), 77 Ind. App. 611, 613, 134 N. E. 209. In that case a child had completed the eighth grade of the elementary school in the township where the child resided. Apparently the elementary school district was smaller than the township and the question before the court was whether

or not the child could be compelled to attend a high school in the township where it resided which was outside the elementary school district in which the child resided. The Appellate Court held that where there is a high school in a township the township is the school district for high school purposes and that because the high school was not located in the elementary school district the parents of the child were not excused from sending it to a high school elsewhere in the township. The court failed to consider the language of section 1 of the compulsory school attendance act of 1921, which makes the county the school attendance district, but the conclusion reached is consistent with what we hold in the case before us, viz., that there may be different school districts for different school purposes. It recognized there was one district for elementary school purposes and another for high school purposes.

In determining what constitutes a school district for the purposes of the case before us, we must keep in mind that there are two phases of our school laws. One is the phase by which schools are provided and children are assigned to them; the other is the phase by which school attendance is compelled. These two phases of school legislation are separate and distinct. Our compulsory school attendance law imposes duties and obligations upon parents to keep children between the ages of seven and sixteen in school. It provides the mechanics for the enforcement of such duty. It contains nothing with reference to the establishment of schools or the designation of schools to which any child shall be sent. A close reading of section 5 of the 1921 Act will disclose that the duty is to send the child to *some* public or *other* school which is subject to inspection by local and state attendance and school

officers. It does not require that it be sent to a school designated by the proper authority or to any particular school. The school may be in the school district in which the child resides or it may be outside the school district in which the child resides, provided it is subject to inspection by attendance officers, as aforesaid.

As above stated, this Act of 1921 has to do only with attendance at school and has nothing to do with the establishment of schools or assignment of pupils to schools that are established. It seems natural and logical, therefore, to look to the school attendance law, and not to laws having to do with the establishment of schools and the assignment of pupils to them, for a definition of "school district," as used in section 5 thereof, and we find that definition in Section 1 of the Act, wherein it is stated in bald, direct language, "That every county . . . shall constitute a separate attendance district. . . ." The district referred to in Section 1 is a school attendance district and inasmuch as the whole act is directed exclusively to attendance, the legislature must have had in mind the attendance district defined in Section 1 when it used the words "school district" in Section 5.

It seems to us, therefore, that, while for some purposes the township or less may be the school unit, for attendance enforcement purposes the unit is the county, and the school district referred to in Section 5 of the 1921 Act is the county. The evidence was clear and uncontradictory that in the county in which the child, Joe, resided there were in session both elementary and high schools during the period that Joe was kept out of school by his parents. Hence, we think that there was evidence to sustain the verdict of the jury that Joseph Gingerich was 14 years of age, and that he remained out of school at a time

when public schools in the county in which he resided were in session and that the appellant permitted, compelled and encouraged his son to remain out of school during such period.

This leaves the question of the constitutionality of the compulsory school attendance law. This question, under the decisions of this court, cannot be presented to this court upon an assignment of error that the trial court erred in overruling a motion for a new trial on the ground that the verdict was contrary to law. *Ellwanger* v. *State* (1931), 203 Ind. 307, 311, and cases cited, 189 N. E. 287; *Cox* v. *State* (1931), 203 Ind. 544, 550, 551, 181 N. E. 469; *De La-Tour* v. *State* (1929), 201 Ind. 14, 16, 165 N. E. 753. In these cases it is held that before the constitutionality of a statute can be presented to this court in a criminal case it must first have been presented to the trial court by a motion to quash or a motion in arrest of judgment.

Notwithstanding the cases above cited, appellant contends that when a constitutional question is pertinent to the record and is presented by counsel in good faith, supported by argument, the court should decide the question, citing *Dowell* v. *Talbot Paving Company* (1894), 138 Ind. 675, 686, 38 N. E. 389. There is conflict between this case and the later cases cited above by us.

It seems to us that sound reason is upon the side of the latter cases and that we should follow them rather than the Dowell case cited by appellant, which must be deemed overruled so far as it is inconsistent with the later cases. *People's, etc., Trust Co., Exr.,* v. *Mills* (1922), 193 Ind. 131, 134, 139 N. E. 145. Therefore, we hold again that where a constitutional question has not been presented to the trial

court in a criminal case by motion to quash or in arrest of judgment, it cannot be presented here upon the ground that the verdict or finding is contrary to law.

There remains the contention of the appellant that the punishment meted out to him is so excessive, harsh and vindictive as to be a violation of Section 16, Art. 1 of the Constitution of Indiana, which provides that excessive fines shall not be imposed and cruel and unusual punishments shall not be inflicted and that all penalties shall be proportioned to the nature of the offense.

Section 16 of Article 1 of the Constitution of Indiana is a limitation on the acts of the legislature and is not a limitation on the discretion of a court or jury acting within the frame work of the statute and where a punishment imposed is within the statute governing the offense charged this court cannot interfere on account of its severity. *Blue* v. *State* (1946), 224 Ind. 394, 400, and cases cited, 67 N. E. 2d 377; *Ledgerwood* v. *State* (1892), 134 Ind. 81, 91, 33 N. E. 631; *McCulley* v. *State* (1878), 62 Ind. 428, 436; *Murphy* v. *State* (1884), 97 Ind. 579, 581; *Shields* v. *State* (1897), 149 Ind. 395, 412, 49 N. E. 351; *Cox* v. *State* (1932), 203 Ind. 544, 557, 177 N. E. 898.

Under the law as it exists in Indiana, punishment within the terms of the statute cannot be challenged on appeal as too severe. If the punishment is excessive the only remedy is by resort to executive clemency.

Judgment affirmed.

Gilkison, J., dissents.

Emmert, J., reserves decision and the announcement of his vote until a later time.

NOTE.—Reported in 83 N. E. 2d 47.

## DISSENTING OPINION.

GILKISON, J.—I dissent from the opinion filed in this case for the following reasons:

The defendant was prosecuted under the criminal laws of the State of Indiana by an affidavit filed in the court below, which omitting the caption, signature, verification and approval, reads as follows:

> "Ruth Glassburn swears he is informed and be-lieves that Chester Gingerich and Mattie Ginge-rich, on or about the 12th day of November, 1947, at and in Jay County, State of Indiana, did then and there unlawfully being the parents of one Joseph Gingerich a child under the full age of sixteen (16) years and over the age of seven (7) years, to-wit: fourteen (14) years of age, permit, compel or encourage said Joseph Gingerich to be-come and remain absent from the public schools of the district which the said Joseph Gingerich was by law required to attend, contrary to the form of the statute in such cases made and pro-vided and against the peace and dignity of the state of Indiana."

It is the law in Indiana that an affidavit or indict-ment attempting to charge a defendant with crime must be sufficiently certain to advise the defendant of the particular law he is intended to be charged with violating. *Pease* v. *State* (1921), 74 Ind. App. 572, 577; *Alderson* v. *State* (1924), 196 Ind. 22, 28, 29; § 9-1104, Burns' 1942 Replacement.

The indefiniteness and uncertainty of the above af-fidavit is so gross that the learned judge who wrote the majority opinion could only identify the law upon which it is based thus:

> "This is an appeal from a final judgment in a case wherein appellant was charged with violating the Indiana compulsory school attendance law. Acts 1921 General Assembly, Ch. 132; §§ 28-501 et seq. Burns' 1948 Replacement."

As originally enacted the law contained 29 sections covering 18 pages of the Acts from page 337 to 355. Succeeding legislatures have added eight additional sections so that it now contains 37 sections, covering 20 pages of the statute cited. From the majority opinion we might conclude that the defendant was convicted of violating the entire law. This, of course, is quite impossible, and produces a situation of great confusion, due to the uncertainty of the affidavit and likewise of the majority opinion.

An affidavit or indictment charging a defendant with a crime not defined by any statute of the State of Indiana is a nullity and this is true whether the affidavit is attacked by a motion to quash, motion in arrest of judgment or is merely attacked by a plea of not guilty. § 9-2401, Burns' 1942 Replacement; *State v. Gosselin* (1939), 110 Vt. 361, 365, 366; *State v. Ryea* (1923), 97 Vt. 219, 221; *Kellerman v. United States* (1924), 295 Fed. 796, 798; *United States v. Leach* (1923), 291 Fed. 788, 792; *People v. Patrick* (1941), 26 N. Y. S. 2d 183, 186. Such an affidavit or indictment may even be attacked after a plea of guilty. *State v. Ulrich* (1902), 96 Mo. App. 689; 31 C. J., Indictments and Informations, § 536, p. 874, 875; *State v. Levy* (1893), 119 Mo. 434; 42 C. J. S., Indictments, and Informations, § 319, p. 1348. See also *Romary v. State* (1945), 223 Ind. 667, 670, 64 N. E. 2d 22; *Laycock v. State* (1893), 136 Ind. 217, 225, 36 N. E. 137. It will be noted that the affidavit charges that the defendant did permit, compel or encourage a certain child, named Joseph Gingerich, *"to become and remain absent from the public schools of the district which the said Joseph Gingerich was by law required to attend."* This affidavit is not in the words or in the substance of any penal statute contained in the compulsory edu-

cation law or in any other law of the State of Indiana and is therefore a nullity.

The law governing in such a situation is well stated in 31 C. J., Indictments and Informations, § 536, p. 874, 875, thus:

> "But generally the objection that the indictment or information fails to describe various acts intended to be proved with that reasonable certainty which the law requires, *or fails to charge an offense known to the law,* or states no offense within the jurisdiction of the court, is fatal at any stage, and not being waived by failure to take advantage thereof at any preliminary stage of the proceedings. *Failure to charge definitely essential elements of the offense is not waived by failure to move to quash the information or to arrest judgment thereon. Defects of substance are not cured by plea.*" (My italics).

As said in *Julian* v. *The People* (1920), 67 Colo. 152, 153:

> "There being no such offense as that with which plaintiff in error was charged, he could, by no act of his, give the court jurisdiction to try him for such offense. Jurisdiction of the subject matter is given by law, and cannot be conferred by consent."

See also *State* v. *Reyner* (1907), 50 Oregon 224, 227. See also 27 Am. Jur., Indictments and Informations, § 187, p. 731; *State* v. *Tupa* (1935), 194 Minn. 488, 260 N. E. 875, 99 A. L. R. 147; *Ulmer* v. *State* (1859), 14 Ind. 52, 54, 55; *Randolph* v. *State* (1860), 14 Ind. 232; *Hatwood* v. *State* (1862), 18 Ind. 492; *Littell* v. *State* (1892), 133 Ind. 557, 580, 33 N. E. 417; § 9-1104, Burns' 1942 Replacement.

This definite, well supported and controlling principle of law is ignored by the majority opinion.

Section 17, the penalty section of the Compulsory Education Act provides a penalty only for violations of Section 1 to 17 inclusive of the act, so we may omit any consideration of the remaining sections so far as this case is concerned.

A careful examination of sections 1 to 17 inclusive of the act clearly indicates that the affidavit upon which appellant was convicted must have been intended to be predicated entirely upon a violation of the first sentence of Section 5 in conjunction with the first sentence of Section 8 of the Act. These two sentences read as follows:

> "Sec. 5. Unless otherwise provided herein, every child between the ages of seven and sixteen years shall attend public school, or other school taught in the English language which is open to the inspection of local and state attendance and school officers; and such child shall attend such school each year during the entire time the public schools are in session in the school district in which such child resides . . ."

> "Sec. 8. Every parent and guardian of any minor child or ward shall be held legally responsible for any violation of this act by such child or ward, unless such parent or guardian is not a party to such violation . . ."

A serious question arises whether under this act the term "legally responsible" includes criminal responsibility. I do not believe it does or that it was intended to do so. I do not think this court can lawfully assume that the affidavit in this case charges this defendant with a criminal violation of the two parts of the sections above quoted.

The opinion suggestively intimates that the affidavit may be fatally defective but that since its sufficiency was not questioned by a motion to quash, "a motion in arrest of judgment, or otherwise either in the trial

court or here upon appeal," the defects were waived. This might be true where there is a defect in the form of the affidavit but it is true then only because of the legal principle attempted to be stated but I think defectively stated, in the next sentence of the opinion, as follows: "If the evidence offered to support the affidavit was sufficient to show an offense the short-comings of the affidavit need not be taken into account by this court on its own motion on appeal. They will be considered cured by the finding of guilty by the court." I think the last sentence in this quotation is quite erroneous. A finding or verdict does not cure an affidavit or indictment that is defective in substance. *Alderson* v. *State, supra*. I think it is always the law that unless an affidavit or indictment states facts sufficient to constitute a public offense under the statutory laws of our state no amount of evidence could cure this defect. *Littell* v. *State, supra*. *Regadanz* v. *State* (1908), 171 Ind. 387, 393. I think it is also true that if an essential element of the offense attempted to be charged is not contained in the affidavit or indictment and there is no evidence to sustain the omitted element no finding of a court or verdict of a jury can cure the defect. *Alderson* v. *State, supra*.

It is also true that "any ambiguities and uncertainties in an indictment or affidavit will be construed most strongly against the state." Ewbanks *Indiana Criminal Law* § 311, p. 184 (2d ed.). *Littell* v. *State, supra,* and cases there cited. *Regadanz* v. *State, supra*. The opinion cites 41 Am. Jur., Pleading, § 404, p. 572, as sole authority for the quoted statement. I might call attention to the fact that this quotation is limited by its author to principles governing pleadings in civil actions and does not purport to deal with or consider pleadings in

criminal prosecutions. See 41 Am. Jur., Pleading, § 1, p. 287. It is true that by failing to question the affidavit by a timely motion to quash or motion in arrest of judgment, the pleading may not be thereafter attacked for deficiencies in form *if there are sufficient averments in substance in it to charge a public offense* but this does not mean that the sufficiency of the evidence to sustain the pleading may not be thereafter attacked. The appellant still had the right to insist that every material fact legally essential to constitute the offense attempted to be charged in an affidavit should be established by the evidence. This is true even in civil actions. *Prudential Insurance Company* v. *Ritchey* (1918), 188 Ind. 157, 162, 119 N. E. 369, 119 N. E. 484; *Jackson, Rec.* v. *Rutledge* (1919), 188 Ind. 415, 425, 122 N. E. 579; *Jackson, Rec.* v. *Atwood, Admx.* (1923), 194 Ind. 56, 57, 140 N. E. 549; *Princeton Coal Co.* v. *Dowdle* (1924), 194 Ind. 262, 268, 142 N. E. 419; *Terre Haute, etc. Traction Co.* v. *Scott* (1926), 197 Ind. 587, 598, 150 N. E. 777; *Thompson* v. *Divine* (1920), 73 Ind. App. 113, 117, 126 N. E. 683; *Slifer* v. *Williard* (1922), 78 Ind. App. 88, 91, 131 N. E. 87, 132 N. E. 321; *Irwin* v. *Harbough* (1922), 78 Ind. App. 175, 177, 134 N. E. 905; *Citizens, etc., Trust Co., Admr.* v. *Terre Haute, etc., Trac. Co.* (1923), 79 Ind. App. 491, 496, 135 N. E. 802; *Angell* v. *Arnett* (1924), 81 Ind. App. 614, 617, 142 N. E. 720; *Fowler, Gdn.* v. *Ball, Exrs.* (1924), 82 Ind. App. 167, 171, 141 N. E. 64.

Undoubtedly the defendant as the father of the child in question, even if a good affidavit was on file, could not be held legally responsible and much more so could not be held criminally responsible unless he caused his child to be absent from school during the entire time

the public schools were in session *in the district in which the child resided.* A careful perusal of the evidence in the case conclusively shows that there was no evidence on this proposition whatever. Under our plan of government in Indiana each township is a school township §§ 28-2401, 28-2402, Burns' 1948 Replacement, § 60-1102, Burns' 1943 Replacement. Appeals from decisions of township trustees with reference to school matters may be taken § 28-2405. The trustee shall take charge of the educational affairs of his township, establish schools etc. § 28-2410, and shall have the care and management of all school property § 28-2411. He shall receive and expend the school revenue including tuition revenue apportioned to his township etc. § 28-2412. *He shall keep a record of his proceedings relative to the schools of his township* etc. § 28-2413. For any failure to discharge any of his duties relative to the schools the trustee may be penalized § 28-2416, and his books and papers relative to schools are subject to inspection §§ 28-2418, 28-2419, 28-2420.

When proper action is taken, the township trustee may transfer a pupil from the district in which he resides to another district of this state, or an adjoining state, §§ 28-3701, 28-3702, 28-3703, 28-3704.

But there is no contention in this case that the child in question had been transferred from the school district in which he resided in Green Township to the Pennville School in Penn Township agreeable with the statutes noted above.

The sole contention that could be made is that he had been transferred under the statutes providing for the abandonment of schools, §§ 28-2801 to 28-2808 inclusive Burns' 1948 Repl. § 28-2801 prohibits a township trustee from abandoning any school in his township,

unless he procure the written consent of a majority of the legal voters of the township; except schools having an average daily attendance of twelve persons or fewer. § 28-2802 provides for the abandonment of any school in the township upon a petition therefor signed by a majority of the legal voters of the school district or corporation. § 28-2803 compels the township trustee to discontinue schools in which the average daily attendance during the preceding school year was 15 pupils or fewer, and authorizes him to discontinue schools in which the average daily attendance during the preceding school year was 20 pupils or fewer under conditions and subject to the exceptions described in that section of the statute. In the event of an abandonment of schools under this statute, it provides for the assignment and transportation of the school children to another school district. §§ 28-2804, 28-2805 and 28-2806 provide further for the transfer and transportation by the township of pupils between the ages of 6 and 12, from discontinued or abandoned schools. § 28-2807 provides that when sixty per cent of the resident taxpayers of a school township petition the trustee of the school township for the abandonment of a high school within the school township, it shall be the duty of the trustee to abandon the high school and provide for the education and transportation of the pupils living within such school township in the township, or in other townships. § 28-2808 provides if a majority of the resident freeholders of any school district in a township petition the township trustee to abandon the school in such school district and consolidate it with some other school or schools in the township the trustee may comply with the petition.

If the school in the school district in which appellant and his 14 year old son resided in Green Township had

been discontinued or abandoned, and he had been assigned to a school in Penn Township, certainly the affidavit must state that fact. If we assume, though wrongfully, that the averment in the affidavit is sufficient on this subject (after verdict) certainly there must be convincing evidence in the record to show that each requirement of the statute of abandonment or discontinuance had been substantially complied with by the township trustee, before there could be any guilt on the part of appellant. The legal abandonment of the school in the school district in which the child resided and his legal assignment to another school is an essential element of the offense charged and must be shown by legal evidence beyond a reasonable doubt. *Rhodes* v. *State* (1946), 224 Ind. 569, 572, 70 N. E. 2d 27; *Scherer* v. *State* (1919), 188 Ind. 14, 18, 121 N. E. 369; *Sharp* v. *State* (1919), 188 Ind. 276, 279, 123 N. E. 161; *Hinshaw* v. *State* (1919), 188 Ind. 447, 124 N. E. 458.

A presumption of innocence always prevails in favor of a defendant who is charged with crime. § 9-1806, Burns' 1942 Replacement. This presumption not only requires the state by its indictment or affidavit to state such facts as will "inform an innocent man of the facts to be shown against him," but as stated by Willoughby, J. in *Alderson* v. *State, supra,* at page 29 it "must contain a statement of facts constituting the offense charged against the defendant. *The defects of an indictment are not cured by a verdict*". (My italics). If these facts must be contained in the indictment or affidavit, and we assume (contrary to fact) that they are contained in this affidavit, certainly then they must be proven by legal evidence. The majority opinion says: "It appears that all the public schools in Green Township had been abandoned and school

children of that township attended the schools of Penn Township which adjoined." It is not even contended that there is any legal evidence of this fact, and having read the bill of exceptions I must say there is no such evidence. The only pretended evidence on the subject is by one Logan, County Superintendent of Schools for Jay County, who seems to have orally stated, (as contained in appellant's brief which the state in its brief accepts as correct) "there are no schools in Green Township and there are children of school age in Green Township. It has been provided for children of school age in Green Township to attend by areas Pennville School from northwest quarter; the southwest quarter to the Governor I. P. Gray School and the east half the Portland schools. Green Township has been divided for the benefit of sending children to adjacent township schools." The Green Township schools "were abandoned before I became Superintendent."

The presumption of innocence which cloaks and protects every defendant accused of crime, placed the burden upon the state to prove the lawful abandonment of the schools of Green Township in the manner provided by §§ 28-2801 to 28-2807, inclusive. This proof must be made by the written record of the Green Township Trustee who made the order of abandonment—if in existence. Only when its loss or destruction is proven can secondary evidence be introduced, and it must then be the best secondary evidence. The County Superintendent has nothing to do with the abandonment of township schools, except possibly on appeal and his oral evidence on the subject is little if any better than mere rumor. It is necessarily mere "hearsay." This matter under the law is solely for the township trustee, and when he acts to abandon the schools of his township he must make a written record

of his action (§ 28-2413, Burns' 1948 Repl.) and he may not act at all until he procures the written consent of a majority of the legal voters of the township (§§ 28-2801, 28-2802, Burns' 1948 Repl.) or if it be the abandonment of a township high school a written petition signed by sixty per cent of the resident taxpayers of the school township asking for the abandonment, (§ 28-2807, Burns' 1948 Repl.). With the presumption of innocence protecting appellant, this essential evidence must be in the record before a conviction can be sustained. No such evidence is in the record. A township trustee abandoning all the schools in his township without the necessary petitions or written consent signed by the necessary number of legal voters acts illegally and the appellant could not by such illegal act of the township trustee be compelled by our compulsory attendance laws to send his son to a designated school outside the township in which he resides. In the absence of such evidence, in a criminal case, no presumption or inference of regularity can be indulged in favor of the trustee or of the State. Indeed the presumption is in favor of the defendant that no such action ever had been taken, that no such evidence is in existence and that the defendant therefore cannot be guilty. To me there is no question that the finding of the court is not sustained by sufficient evidence and is contrary to law. The judgment should be reversed.

## DISSENTING OPINION.

EMMERT, J.—At the time the majority opinion was handed down my brother Gilkison was in dissent, and preparing an opinion stating his views of the law in the case. The matter to be decided was one of great importance for the school system of Indiana, and since

I was unwilling to join in any opinion until I had had the benefit of the experience, research and reasoning of my brother Gilkison, I thought it necessary to reserve my decision and vote until I had had the opportunity to compare both opinions. I have now examined his dissenting opinion and feel compelled to take the position that the appellant was erroneously convicted.

This case with its most unusual facts brings to light the confused condition of many of our laws on certain school matters. There are no common law crimes in Indiana, and unless a penal statute provides an offense for the facts proved there can be no conviction. The material part of § 28-505, Burns' 1948 Replacement, (Acts 1921, ch. 132, § 5, p. 337), provides as follows:

"Unless otherwise provided herein, every child between the ages of seven (7) and sixteen (16) years shall attend public school or other school taught in the English language which is open to the inspection of local and state attendance and school officers; and such child shall attend such school each year *during the entire time the public schools are in session in the school district in which such child resides. . . .*" (Italics added.)

At the time this statute was enacted this court had defined a school district as follows: "A school district has no fixed boundaries, but is composed of the *persons residing in the township who have been enumerated and attached thereto under* § 5958 Burns' 1901, Acts 1895, p. 127, § 1." (Italics added.) *Ireland* v. *State, ex rel.* (1905), 165 Ind. 377, 380, 75 N. E. 872. It is apparent that the legislature used the term "attendance district" in § 28-501, Burns' 1948 Replacement, in a sense different than the term "school district" as used in § 28-505, Burns' 1948 Replacement,

*supra.* When the legislature used the term "school district" it will be presumed, in the absence of anything in the statute to the contrary, that the term was subsequently used in the same sense as judicially defined.

The county school superintendent testified there were no schools in Green Township of Jay County where the appellant resided, but that "It has been provided for children in Green Township of school age to attend by areas the Pennville school from the northwest quarter—approximately quarter—and the Southwest quarter, the Governor I. P. Gray school, and the East half the Portland schools," and that the appellant's residence was "in that section from which the children are transported to the Penn Township public schools."

There was no evidence that there had been any consolidation of school districts as provided for by § 28-2808, Burns' 1948 Replacement, nor does the State's evidence show any establishment of any joint school. In fact it is impossible to tell upon what theory the State was basing its case.

It is not necessary to consider the sufficiency of the affidavit, but in any event the burden was upon the State to prove beyond a reasonable doubt that the appellant had violated § 28-505, Burns' 1948 Replacement, *supra.* There was no proof of any consolidation of the township schools, or of any school district within Green Township as provided by statute. I am unable to find any statute under the evidence in this case which made the Pennville school district, assuming there was one, the school district of the child of appellant. There were no public schools of Green Township in session at any time during the year. The public schools must have been in session in the school district in which the child resides before appellant

could have been guilty. For these reasons I believe the verdict was contrary to law.

Although the facts in this appeal are very unusual it is to be hoped that this serious gap in the school statutes will be brought to the attention of the legislature which is now in session, so that the school attendance laws of the State may be made uniform as to all pupils wherever they reside, and under any possible facts involved in abandonment, consolidation, transfers or joint schools.

NOTE.—Reported in 83 N. E. 2d 479.