WILLIE LEE GRAY *v.* STATE OF INDIANA.

[No. 2-673A143. Filed January 23, 1974.]

*David F. McNamar, Steers, Klee, Sullivan & LeMay,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *John H. Meyers,* Deputy Attorney General, for appellee.

SULLIVAN, P.J.—Defendant-appellant Gray was convicted of carrying a pistol without a license and was sentenced to one year imprisonment.

The controlling statute at the time of the offense, IC 35-23-4-3, Ind. Ann. Stat. § 10-4736 (Burns 1956) provided:

> "No person shall carry a pistol in any vehicle or on or about his person, except in his place of abode or fixed place of business, without a license therefor as hereinafter provided."

The following section, however, contains an exception [IC 35-23-4-4, Ind. Ann. Stat. § 10-4737 (Burns 1956)] as follows:

> "The provisions of the preceding section [§ 10-4736] shall not apply to . . . any person while carrying a pistol unloaded and in a secure wrapper from the place of purchase to his home or place of business, or to a place of repair or back to his home or place of business or in moving from one place of abode or business to another."[1]

---

1. The two sections considered were superseded by IC 35-23-4.1-3, Ind. Ann. Stat. § 10-4751c (Burns 1973 Supp.) and IC 35-23-4.1-4, Ind. Ann. Stat. § 10-4751d (Burns 1973 Supp.) effective October 1, 1973.

· In the cause before us, Gray was operating his automobile on the evening of June 21, 1972 in Indianapolis and was stopped by a police officer because Gray and two other occupants of the vehicle approximated a description of three suspected robbers. When Gray stepped out of his car at the officer's request, Gray advised the officer that he had a pistol in his belt and when asked acknowledged that he did not have a permit for the firearm.

Gray seeks reversal upon two theories:

(1) The evidence was insufficient to show that at the time carried, the weapon was loaded; and that as permitted by statute, he was transporting the unloaded pistol from his place of business to his home in a secure wrapper.

(2) The one year sentence imposed was arbitrary and capricious in that the trial judge failed to utilize the alternative penalty provided, i.e., a fine.

## EVIDENCE WAS SUFFICIENT TO ESTABLISH GUILT OF DEFENDANT

Gray argues that the State failed to prove that the pistol he carried was loaded. He points out that the officer merely stated that he obtained the pistol from Gray and he identified six rounds of ammunition which at the time of trial were in a marked envelope. The officer did not specifically state that the ammunition was in the weapon at the time of confiscation. His precise testimony on this point is as follows:

"Q. Officer, I'm going to hand you what has been marked, for identification purposes only, as 'State's Exhibit One (1)', and ask if you can identify it?

A. Yes, I can. It's marked with my initials, D.A.H.; dated 6-21-72; it's a Rhone '22 caliber pistol, and the envelope contains six (6) live rounds of ammunition.

Q. Where did you obtain this?

A. From Mr. Willie Gray.

MR. LITTLE: At this time, subject to objection, the State offers into evidence, what has been marked, 'State's Exhibit One (1)'.

MR. SOBEL: No objection.

THE COURT: Alright, show it in evidence.

WHEREUPON, 'STATE'S EXHIBIT NUMBER ONE (1)', IDENTIFIED BY WITNESS AS A RHONE '22 CALIBER PISTOL, AND ENVELOPE CONTAINING SIX (6) LIVE ROUNDS OF AMMUNITION, WAS ADMITTED INTO EVIDENCE, WITHOUT OBJECTION."

As stated in *Day* v. *State* (1968), 251 Ind. 399, 241 N.E. 2d 357:

> "When an offense is created by statute and another statute or another section of the same statute makes exceptions thereto, it is not necessary for the prosecution in the indictment or affidavit to negate the exception by stating that the defendant does not come within the same. That being true, then it is not incumbent upon the state to prove the exceptions if they need not be alleged in the charge."

Here, therefore, the State was not required to prove that Gray's pistol was loaded.

Be that as it may, the exception within which Gray claims to fall requires not only that the weapon be unloaded but also that it be carried in a secure wrapper.

Gray contends that since the phrase "secure wrapper" as used in the Firearms Act has not been judicially construed, we should classify the weapon here as having been securely wrapped, i.e., confined at his side by his belt and clothing. Whatever else may be construed as a secure wrapper, we hold that a pistol is not in a "secure wrapper" when it is merely carried in the possessor's belt where it is as readily accessible as if it were contained in a holster on the carrier's person. We have no doubt that it was the intent of the Legislature in this regard to safeguard not only the public at large, but those who seek to transport firearms from self-inflicted wounds. We therefore hold that the "secure wrapper" contemplated by the statute must be such as to prevent immediate or ready access to the injurious capabilities of weapons thus carried.

Gray did not have his pistol in a "secure wrapper". The evidence was therefore sufficient to support conviction.

## THE SENTENCE IMPOSED WAS WITHIN THE COURT'S DISCRETION AND WAS NOT ERRONEOUS

The provision controlling the penalty imposed for Gray's offense was Ind. Ann. Stat. § 10-4747[2] (Burns 1956) and authorized a fine of not more than $1,000.00 *or* imprisonment for any determinate period of not less than one year nor more than ten years.

At the time of sentencing, Gray's counsel inquired whether the Court would consider imposition of a fine. The Court declined to do so and referring to *Tate* v. *Short* (1971), 401 U.S. 395, 91 S.Ct. 668 stated:

> "THE COURT: Well, there's a fellow by the name of Tate, who took a fellow by the name of Short, to the United States Supreme Court, and hurt a lot of poor people like your client."

The colloquy continued as follows:

> "MR. SOBEL: Your Honor, he could pay a fine, if there was a fine imposed. He has a good job, and he's had that job for a year.
>
> THE COURT: I think that any fine I would impose in here would be unfair, and it would be burdensome, and beyond his capacity to pay.
>
> MR. SOBEL: We discussed figures up to a Thousand Dollars. He has a good job, and he will lose the job. His employer stated that he was an exceptional employee.
>
> THE COURT: One (1) year less one (1) day. He's your's, Sheriff."

We would agree with appellant that the statements of the trial court hereinabove set forth would seem to indicate a mis-interpretation of the *Tate* case. The United States Supreme Court there held merely that it was constitutionally impermissible to convert a fine imposed into a term of imprisonment for a defendant unable to pay the fine. The fact remains however, that the statute here permits the court to impose either a fine *or* imprisonment.

---

2. This section was superseded by IC 35-23-4.1-18, Ind. Ann. Stat. § 10-4751r (Burns 1973 Supp.), effective October 1, 1973.

Our Supreme Court in *Gingerich* v. *State* (1948), 226 Ind. 678, 83 N.E.2d 47 held that the constitutional prohibition against cruel and unusual punishment is a limitation upon the acts of the General Assembly and not upon the discretion of a trial court acting within the framework of a statute imposing penalties for the offense. Where, as here, the penalty assessed is in keeping with that prescribed by the legislature, we cannot interfere. We may not rewrite the statute nor absent an abuse of discretion substitute what we deem to be a more equitable penalty. *See McHaney* v. *State* (1972), 153 Ind. App. 590, 288 N.E.2d 284; *Landaw* v. *State* (1972), 258 Ind. 67, 279 N.E.2d 230.

The judgment is hereby affirmed.

Buchanan, J. concurs; White, J. concurs, with separate opinion.

### Concurring Opinion

White, J.—I agree that the appellant has failed to make a sufficient showing of abuse of discretion in sentencing to justify any interference at the appellate level. I would, however, reserve for future decision the question of what our role is in the "review and revision of sentences for defendants in all criminal cases", as provided for in Article 7, sections 6 and 4, Constitution of Indiana, as amended November 3, 1970, effective January 1, 1972. Neither *McHaney* v. *State* (1972), 153 Ind. App. 590, 288 N.E.2d 284, 33 Ind. Dec. 298, nor *Landaw* v. *State* (1972), 258 Ind. 67, 279 N.E.2d 230, 29 Ind. Dec. 378, involved a question of the trial court's choice between alternative penalties *authorized* by statute and are therefore not in point here.

Article 7, section 4, Constitution of Indiana, as amended November 3, 1970, effective January 1, 1972, includes the provision that "[t]he Supreme Court shall have, in all appeals of criminal cases, the power to review all questions of law and to review and revise the sentence imposed."

The pertinent comment of the Judicial Study Commission which drafted section 4 is:

"In all criminal appeals before the Supreme Court (direct appeals from a trial court as well as those from the Court of Appeals), the Supreme Court has the power to review questions of law and to review and revise sentences. The proposal that the appellate power in criminal cases include the power to review sentences is based on the efficacious use to which that power has been put by the Court of Criminal Appeals in England."

Section 6 of this new judicial article of our state constitution provides that in all cases other than direct review of administrative decisions, the Court of Appeals

"shall exercise appellate jurisdiction under such terms and conditions as the Supreme Court shall specify by rules which shall, however, provide in all cases an absolute right to one appeal and to the extent provided by rule, review and revision of sentences for defendants in all criminal cases."

The pertinent commission comment is:

"Criminal cases, not directly appealable to the Supreme Court, and authorized by rule to be reviewed by the Court of Appeals shall have such kind of review as the rule permits."

Appellate Rule 4 provides:

"(A) . . . . The Supreme Court shall have exclusive jurisdiction of:

\* \* \*

"(7) Appeals in criminal cases from judgments (sentences) imposing a sentence of death, life imprisonment or a minimum sentence of greater than ten [10] years. If the appeal is from the denial of post-conviction relief, jurisdiction shall be determined by reference to the sentence originally imposed;

\* \* \*

"(B) . . . . In all other cases, appeals shall be taken to the Court of Appeals, notwithstanding any law, statute or rule providing for direct appeal to the Supreme Court of Indiana."

Nowhere in the rules is there to be found anything which suggests that the "kind of review" criminal cases shall have

in the Court of Appeals is to be different from the review criminal cases directly appealable to the Supreme Court shall have in that court. It therefore is my opinion that AP. 4(B), *supra,* has given us, pursuant to Art. 7, § 6, *supra,* "the [same] power . . . to review and revise the sentence imposed" in all criminal cases appealable to us which Art. 7, § 4, *supra,* gave to the Supreme Court in cases appealable directly to it. *Sekerez* v. *Board of Sanitary Commissioners, et al.* (1973), 261 Ind. 398, 304 N.E.2d 533, 40 Ind. Dec. 111.

Although the Indiana Supreme Court has had no occasion to interpret this new constitutional grant of appellate power to "review and revise the sentence imposed", it did allude to it in *Dickens* v. *State* (1973), 260 Ind. 284, 295 N.E.2d 613, 36 Ind. Dec. 275, 282. There the Court reviewed a second degree murder conviction and sentence and held that "these facts can only justify a conviction for voluntary manslaughter". As authority for its mandate to reduce the sentence to manslaughter it cited *Hutchinson* v. *State* (1967), 248 Ind. 226, 225 N.E.2d 828, 10 Ind. Dec. 378, and added:

> "Furthermore, the authority of the Supreme Court to modify or revise a sentence has been constitutionalized. Art. 7 § 4 Constitution of the State of Indiana [as added November 3, 1970]." (Bracketed clause in original.)

One could infer from that reference that the writer of that opinion believed the new judicial article had added nothing to the Supreme Court's pre-existing inherent power. But even if such an inference is accurate, it does not preclude a future holding that it is within the inherent judicial power of a constitutional court of appellate jurisdiction to nullify by appropriate revision a trial judge's abuse of discretion in sentencing. *Chism* v. *State* (1932), 203 Ind. 241, 245, 179 N.E. 718, clearly implies that the Supreme Court possessed that power long before the new judicial article was ratified by the voters. In fact, the exceedingly long list of cases cited in 24A C.J.S. 754, Criminal Law § 1878, indicates the majority rule to be: "The discretion of the trial court in fixing the

sentence, punishment, or costs within the limits prescribed by law will not be reviewed or revised, *except for abuse.*"[1] (My emphasis.)

The dearth of Indiana criminal appellate opinions in which sentences have been reviewed to determine whether there has been an abuse of discretion may be due in large measure to the fact that there are so few instances in which the legislature has seen fit to vest any sentencing discretion in the trial court.[2] It may also be due in equally large measure to the reluctance of appellate judges to assume responsibility for deciding anything but "questions of law". And finally, little or no thought seems to have been given to the matter of making a record from which it is possible to ascertain whether the sentencing judge abused his discretion.

It seems to me so obvious as to be indisputable, that the inclusion in new Article 7, section 4, of the clause granting "the power . . . to review and revise the sentence imposed" was for the purpose of changing that situation and not *merely* for the purpose of constitutionalizing the existing exceedingly limited review and revision practice. This is underscored by the Commission comments in reference to "the efficacious use to which that power has been put by the Court of Criminal Appeals in England."

A report submitted to the American Bar Association Project on Standards for Criminal Justice in December, 1965, entitled *The Review of Criminal Sentences in England,* by Dean Daniel J. Meador (the Meador report) is published as Appendix C to the approved draft of the American Bar Association *Standards Relating to Appellate Review of Sentences.* Reference to the Meador report, as well as to the standards themselves,

---

1. This also appears to be the standard for review of the trial court's revocation of suspension of sentence. *Davis* v. *State* (1971), 256 Ind. 58, 63, 267 N.E.2d 63, 66, 24 Ind. Dec. 618.

2. The extent of the sentencing court's discretion has recently been slightly broadened. See Willis, *Sentencing Alternatives for Indiana Judges,* a 1973 pamphlet published by the Center for Judicial Education, Indianapolis.

the comments, and the other materials included in the ABA pamphlet all suggest that the drafters of the new judicial article had in mind that the scope of the review and revision of criminal sentences should be much broader than that which has yet been exercised at the appellate level in Indiana.

A mere glance at the ABA Standards (both those for the trial court and those for the appellate court) is sufficient to convince any Indiana lawyer that it is presently possible for the Indiana courts to follow them in but few instances. Until the Legislature sees fit to trust the courts with a much wider range of discretionary power to fit the sentence to the *particular* crime and to the *particular* individual who has committed it, the judicial adoption of those standards would avail little. But in those rare instances in which the Legislature has given the trial court *any* range of discretion in sentencing, the exercise of that discretion should certainly be open to appellate review and to appropriate revision whenever the record reveals that the discretion permitted has been abused.[3]

The case at bar involves an instance in which the Legislature has invested the trial court with more than the usual range of discretionary sentencing power. Here the sentencing judge had not only the authority to elect between a fine and a term of imprisonment, but after making that election, he was empowered to determine (within limits) the amount of the fine or the length of the imprisonment. The court was authorized by statute[4] to impose a fine of not more than $1,000.00 *or*

---

3. The ABA standards relating to appellate review of sentences include:

"PART III.  SCOPE OF REVIEW

3.1  Duties of reviewing court.

(a)  It should be the obligation of the reviewing court to make its own examination of the record designed to effect the objectives of sentence review as stated in section 1.2."

4.  IC 1971, 35-23-4-14, Ind. Ann. Stat. § 10-4747 (Burns 1956 Repl.) which was repealed, effective October 1, 1973, by Acts 1973, P.L. 333, § 5. The present statute, IC 1971, 35-23-4.1-18, Ind. Ann. Stat. § 10-4751r(c) (Burns 1973 Supp.), provides that the first offense is a misdemeanor for which imprisonment up to six months or a fine up to $500.00, or both,

a determinate term of imprisonment of not less than one year or more than ten years. He chose the prison sentence rather than the fine. If we were able to determine from the record that that choice was an abuse of discretion, we should set it aside.

To say that because "the penalty assessed is in keeping with that prescribed by the legislature, we cannot interfere", is to ignore the duty which I believe the constitution and the rules of the Supreme Court have cast upon us. In this context I am impressed with the words of the Supreme Court of Wisconsin in *McCleary* v. *State* (1971), 49 Wis.2d 263, 182 N.W.2d 512, 519:

> "[T]he legislature vested a discretion in the sentencing judge, which must be exercised on a rational and explainable basis. It files [flies] in the face of reason and logic, as well as the basic precepts of our American ideals, to conclude that the legislature vested unbridled authority in the judiciary when it so carefully spelled out the duties and obligations of the judges in all other aspects of criminal proceedings. Just because the legislature provides a range of ten years, it would be nonsense to conclude that, in a particular case, it would make no difference in terms of legislative intent whether the sentence was for one year or ten."

> \* \* \*

> "In discussing review of sentencing, we have frequently restated the *Tuttle* caveat (*supra,* 21 Wis. 2d p. 150, 124 N.W.2d p. 11):

>> '\* \* \* that this question should be treated in terms of strong policy against interference with the discretion of the trial court in passing sentence \* \* \*.'

> \* \* \*

> "It is thus clear that sentencing is a discretionary judicial act and is reviewable by this court in the same manner that all discretionary acts are to be reviewed."

In that case, as in the case at bar, the reviewing court was handicapped by the failure of the trial judge to state his

---

may be assessed. A subsequent offense is a felony for which a determinate one-to-ten year sentence *shall* be imposed *and* a fine of $100.00 to $1,000.00.

reasons for the sentence he chose.[5] Being a supreme court, however, the Wisconsin court was in a position to remedy that defect in a manner which it is to be hoped our Supreme Court will eventually find meet.

"We adopt Standard 2.3 (c) of the American Bar Association Standards Relating to Appellate Review of Sentences, page 11, which provides:

'The sentencing judge should be required in every case to state his reasons for selecting the particular sentence imposed. Normally, this should be done for the record in the presence of the defendant at the time of sentence. In cases in which the sentencing judge deems it in the interest of the defendant not to state fully the reasons for the sentence in the presence of the defendant, he should prepare such a statement for transmission to the reviewing court as a part of the record.'

"The purpose of the sentencing statement is not only to aid in appellate review but also to facilitate the trial judge's rationale of his sentences. The requirement that the reasons for sentencing be stated will make it easier for trial judges to focus on relevant factors that lead to their conclusions. As Judge Luther Youngdahl has said in Remarks Opening the Sentencing Institute Program, Denver, Colorado, 35 F.R.D. 387, 388 (1964), 'a good sentence is one which can be reasonably explained.' "

Thus fortified the Wisconsin Supreme Court was able to treat the absence of a statement of reasons as giving the appearance of an abuse of discretion. It noted that

"the failure to exercise discretion (discretion that is apparent from the record) when discretion is required, constitutes an abuse of discretion. We will not, however, set aside a sentence for that reason; rather, we are obliged to search the record to determine whether in the exercise of proper discretion the sentence imposed can be sustained. It is not only our duty not to interfere with the discretion of the trial judge, but it is, in addition, our duty to affirm the sentence on appeal if from the facts of record it is sustainable as a proper discretionary act." (182 N.W.2d at 522.)

Defendant's appeal brief relies solely on the trial judge's remarks, at sentencing, in reference to *Tate* v. *Short* (1971),

---

5. Our trial judge's partial statement will be discussed *post.*

401 U.S. 395, 91 S.Ct. 668, to show an abuse of discretion. There is, however, much more in the record to support the trial court's choice of a *minimum* prison sentence than the mere fact (if it be a fact) that *Tate* v. *Short* rendered it impracticable for the trial court to coerce payment of an adequate fine or to impose a jail sentence of less than one year in the form of a fine which defendant could "pay" only by "laying-it-out" at five dollars per day. Appellant's argument completely ignores the precommitment report which includes, *inter alia,* the defendant's prior record of convictions, including theft, malicious trespass, shoplifting, and carrying a concealed weapon.

A strong argument could have been made *to the trial court* based on his employer's testimony at trial that defendant was "a responsible, qualified person, in his position" and on his statement to the precommitment investigator that he feels defendant has started on a path of correction since he has been able to earn a decent living. This seems to be corroborated by the fact that defendant had no arrests after April 1, 1968, until the present arrest four years later, which apparently came about only because he and his companions resembled the description of hold-up suspects. His testimony that he was carrying the gun only for protection is wholly unrefuted.

But whether the members of the community will be at less risk of injury to their persons and property from defendant after he serves his year in prison than they would have had he been permitted to continue his employment, was for the trial court's initial determination. On the whole record we cannot say that he abused his discretion in the decision he made.

I therefore concur.

NOTE.—Reported at 305 N.E.2d 886.