**Michael A. BECK, Appellant**
**(Defendant Below),**

v.

**STATE of Indiana, Appellee**
**(Plaintiff Below).**

**No. 2–880A273.**

Court of Appeals of Indiana,
First District.

Jan. 19, 1981.

Samuel H. Power, Delphi, for appellant.

Theodore L. Sendak, Atty. Gen., Janis L. Summers, Deputy Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

Defendant-Appellant Michael A. Beck (Beck), appeals his convictions of two counts of Ind. Code 35–23–4.1–3, knowingly and unlawfully carrying a firearm without a license; and knowingly and unlawfully carrying a handgun without a license—prior conviction. Beck claims the trial court erred by denying his motion to quash the array of the jury, denying an instruction, in that insufficient evidence existed for the verdicts and that the verdicts were contrary to the law or the evidence.

We affirm.

Beck argues that the array of the jury was improper because the districts did not conform with the statutes. The districts in Carroll County have not been redrawn in many years. A portion of Deer Creek township forms a triangular section in District 3. The requirements for selecting a jury are contained in Ind. Code 33–4–5–2 and Ind. Code 17–1–14–2. Beck claims that the array was improper because District 3 was not compact in nature pursuant to IC 17–1–14–2 and therefore, the array was not drawn in proportion to each county commissioner's district. The jury, however, was drawn in proportion to the number of registered voters in each township as compared to the total population of Carroll County. The trial court found this method to constitute substantial compliance to IC 33–4–5–2.

The purpose behind IC 33–4–5–2 is to insure that the method used in selecting the jury is not arbitrary and that it does not result in the systematic exclusion of any group. *Shack v. State*, (1972) 259 Ind. 450, 288 N.E.2d 155. The supreme court in *Taylor v. State*, (1973) 260 Ind. 264, 295 N.E.2d 600, 605, stated:

> The use of lists, whether they be property taxpayers or registered voters, so long as they represent a reasonable cross section of the people of the county, cannot be said to violate the rights of the accused, in the absence of a showing that such use is made in a deliberate attempt to exclude certain groups from jury selection. . . .

Beck has not demonstrated any attempt to exclude certain members from jury selection or that he was prejudiced in any way with the jury selected. Minor irregularities from the statutes directing the selection and calling of jurors will not create a prejudice to the substantial rights of the defendant. *Owen v. State*, (1979) Ind., 396 N.E.2d 376. We are not convinced that Beck was prejudiced by the method of selection.

Beck argues the trial court erred in excluding his instruction regarding *mens rea*. The instruction read as follows:

> The law of the State of Indiana is that an overt act, to constitute a crime, must be accompanied by a criminal intent, and a crime is not committed if the mind of the person doing the act is innocent. Without a criminal intent there is no crime, and if you find from the evidence that the State has not proved beyond a reasonable doubt that the defendant had a criminal intent to violate the Uniform Firearms Act, you should then find the defendant not guilty.

In reviewing an instruction, it is necessary to determine whether: the instruction correctly states the law; that there is sufficient evidence in the record to support giving the instruction; and the substance of the disputed instruction is covered by the given instructions. *Williams v. State*, (1980) Ind., 402 N.E.2d 954.

The trial court did not err in refusing to give Beck's instruction. The court tendered the following instruction concerning intent:

> A person engages in conduct knowingly if, when he engages in the conduct, he is aware of a high probability that he is doing so.

The court also gave instructions regarding the elements of the crime which needed to be proved as well as an instruction as to what constitutes reasonable doubt. The substance of Beck's instruction was covered in the other instructions given by the trial court.

In addition, the refusal to offer Beck's instruction was proper because such instruction was an incorrect statement of law. It is not necessary to prove Beck intended to violate the Uniform Firearms Act, but that he intended to do the act which is in violation of the law. *Johnson v. State*, (1971) 256 Ind. 497, 269 N.E.2d 879. Beck was charged with *knowingly* and unlawfully carrying a handgun without a license. The court gave an instruction which correctly described the requisite intent.

Beck also claims that there was insufficient evidence to support the verdicts and that the verdicts were contrary to both the law and the evidence. The evidence most favorable to the State reveals that Beck was stopped for speeding in a vehicle which was improperly registered. The arresting officer informed Beck that the vehicle would have to be impounded and Beck then became nervous and fidgety. The officer and Beck were in the police vehicle. The officer became engaged in giving directions to a passerby and at some point during that conversation, Beck returned to his vehicle. The officer testified he observed Beck was partially turned around in the front seat with one arm doing something in the back seat. After approaching Beck, the officer asked him if there was something that he should know about. Beck admitted he had a gun and voluntarily removed it from under the front seat. The gun did not have a cylinder. The officer inquired where the

cylinder was and Beck produced the cylinder from a grocery bag in the back seat almost immediately afterwards. Beck argued that he intended to have the gun repaired but testified that he did not plan to go to the repair shop that evening. The officer testified that the gun could be disassembled and reassembled within minutes.

 Beck argues that he is not guilty of the offenses because he can meet an exception pursuant to Ind. Code 35–23–4.1–4, which states:

> Any person while carrying a hand gun unloaded and in a secure wrapper from the place of purchase to his place of abode or fixed place of business, or to a place of repair or back to his place of business, or in moving from one place of abode or business to another . . .

In order for Beck to meet the above exception, Beck must prove the gun was unloaded *and* in a secure wrapper. *Gray v. State*, (1974) 159 Ind.App. 200, 305 N.E.2d 886. The burden is on Beck to prove he is within the exception. *Moore v. State*, (1977) 267 Ind. 270, 369 N.E.2d 628.

In reviewing the sufficiency of the evidence, this court examines the evidence most favorable to the verdict along with all reasonable inferences drawn from the evidence. The judgment will be affirmed if there exists substantial evidence of probative value to support each element of the offense. *McCormick v. State*, (1978) Ind. App., 382 N.E.2d 172. Upon review, this court will not reweigh the evidence or judge the credibility of witnesses. *Scott v. State*, (1980) Ind.App., 404 N.E.2d 1190.

There is no doubt that Black was carrying a handgun without a permit. The essential question is whether Beck could fall within the above exception. Beck produced the gun from under the seat and the cylinder from a grocery bag from the backseat. The jury could have easily inferred that Beck disassembled the gun and placed the cylinder in the bag. There was testimony that Beck had experience with guns, that the gun could have been assembled easily, that Beck was seen with his arm in the back seat doing something, and that Beck quickly found the cylinder. In light of the above facts, the jury was presented with enough evidence to disbelieve Beck. The verdict was supported by sufficient evidence and the verdict was consistent with the evidence.

Beck also argues that the verdict was not supported by law, in that the gun was in a secure wrapper. In *Gray v. State*, 159 Ind.App. 200, 305 N.E.2d 888, it was stated:

> We therefore hold that the "secure wrapper" contemplated by the statute must be such as to prevent immediate or ready access to the injurious capabilities of the weapons thus carried.

We remain unpersuaded that a handgun under the front seat of a vehicle with a cylinder within easy reach prevents immediate or ready access to the gun.

The judgment is hereby affirmed.

NEAL and RATLIFF, JJ., concur.